IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREW AND LAUREN HACKNEY,
*individually and on behalf of their minor*
*Daughter, K.H.,*

        CIVIL DIVISION

      Plaintiffs,

v.

      2:24-cv-00472 – WSH-KT

ALLEGHENY COUNTY et al.,

      Defendants.

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6), Allegheny County, Jenna Reed, Michelle Veselicky, Michele Haney, Emma Embar, and Monica Anderson-Rhones file this BRIEF IN SUPPORT OF MOTION TO DISMISS.

## I.    FACTS

Minor Plaintiff K.H. was born to Lauren and Andrew Hackney on February 9, 2021. (ECF #12, ¶13 *Am. Compl.*).  Plaintiffs have been under the jurisdiction of the Allegheny County Family Court since November 17, 2021, following a ChildLine report to the Allegheny County Office of Children Youth and Families ("OCYF") stating that K.H. reported to her pediatrician severely dehydrated and with a one pound weight loss. The report further stated that K.H. was admitted to UPMC Children's Hospital where the family reported that they usually feed her twice a day – one bottle in the morning and one in the evening.  The reporting source stated that both parents and aunt who lives in the household have intellectual disabilities and they do not appear to understand that K.H. needs to be fed more

often.  (Ex. A; *Childline Report*; Am. Compl. ¶25)[1].  K.H. was diagnosed with dehydration, hypoglycemia, hypernatremia, and hyperchloremic anion gap metabolic acidosis as a result of lack of feeds. (Ex A; *Childline Report*).   At the time of the Childline Report, K.H. had been transferred by UPMC Children's Hospital to Children's Home of Pittsburgh ("Children's Home"). (Am. Compl., ¶23).

Defendant CYF Caseworker Jenna Reed traveled to the Children's Home to investigate the Childline report.  Based on the findings of the investigation, Defendant Michelle Veselicky filed an Application for Emergency Protective Custody of K.H. which was verbally granted by the Family Court judge.  (Am. Compl. ¶33); (Ex. B, *Application for Emergency Custody*).   The Family Court Judge issued a confirmation of verbal Order for Emergency Custody Authorization ("ECA") stating that the Court finds that to allow K.H. to remain in the home would be contrary to the child's welfare and not in the best interest of the child. (Ex. C, *Confirmation of Verbal ECA*).  The ECA order granted protective custody to OCYF County.  (Ex. C).

Under the Juvenile Protection Act, a child may be taken into "protective custody" pursuant to a court order issued according to 42 Pa.C.S.A. § 6324. "Protective custody" is a temporary solution for a child at risk of abuse.  42 Pa.C.S.A. § 6324(1). Additionally, 23 Pa.C.S.A. § 6315 provides that upon obtaining an order for protective custody – the ECA, an informal hearing must be held to determine whether to continue protective custody. This is

---

[1] This Court must consider, "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  This Court is to, "consider the complaint in its entirety, as well as… documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).  This court may also consider, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

referred to as a "shelter care hearing." This hearing was held on November 19, 2021, before a Family Court Judge. (Am. Compl. ¶ 41). Both Andrew and Lauren Hackney were represented by counsel. (Ex. D, *Shelter Care Order*). The presiding Judge issued an Order finding that to return the child to the home of Andrew and Lauren Hackney is not in the best interest of the child and would be contrary to the child's welfare. (Ex. D). The Order transferred legal and physical custody of the Minor Plaintiff K.H. to OCYF and further ordered that K.H. was to remain in current foster home. *Id.*

OCYF filed a Dependency Petition on November 24, 2021. (Am. Compl. ¶46). On December 7, 2021, OCYF placed K.H. with Foster Parents who were family friends specifically requested by the Hackneys. (Am. Compl. ¶38, 49). An adjudicatory hearing took place on March 8, 2022. (Am. Compl. ¶47). Andrew and Lauren Hackney were represented by counsel. (Ex. E, *Order of Adjudication*). The Family Court Judge found clear and convincing evidence existed to substantiate the allegations set forth in OCYF's dependency petition and to support a finding that K.H. was without proper care and control. *Id.* Accordingly, Minor Plaintiff K.H. was adjudicated dependent. *Id.* Minor Plaintiff K.H. was ordered to remain in the legal and physical custody of OCYF. *Id.* The Family Court ordered that Minor Plaintiff K.H. remain in her current placement with Foster Parents. *Id.*

Since K.H. was adjudicated dependent by the Family Court Judge due to being without proper care and control, permanency review hearings have been held on June 9, 2022, September 1, 2022, December 22, 2022, February 1, 2023, February 23, 2023, April 6, 2023, July 11, 2023, January 31, 2024, May 14, 2024. (Ex. F; G; I; J; K; L; M; N; O, *Permanency Review Orders*). Andrew and Lauren Hackney were represented by counsel at each hearing. *Id.* Following each permanency review hearing, The Family Court Judge issued an order

finding that the placement of Minor Plaintiff K.H. continues to be necessary and appropriate. *Id.* The next scheduled permanency review hearing is to take place on August 6, 2024. (Ex. O, *Permanency Review Order*).

In March 2022, the Family Court Judge ordered that Plaintiffs Lauren and Andrew Hackney are to complete evaluations with Achieva and work with Achieva services if appropriate. (Ex. E, *Order of Adjudication*). CYF believes a referral was made to Achieva and parents were on a waiting list. However, in February 2023 it was discovered that Achieva reported that it did not have an active referral. (Ex. K, *Permanency Review Order*). Andrew and Lauren Hackney were re-referred to Achieva on February 6, 2023, and began to work with Achieva shortly thereafter. (Ex, K; Ex. L, *Permanency Review Orders*). Even though Minor Plaintiff K.H. had/has been in placement for more than 15 of the past 22 months, OCYF has not moved to terminate parental rights pursuant to 42 USCA §675(5)(E) due to the delay in getting Achieva services in place. (Ex. L, Since working with Achieva, the presiding Family Court Judge has found that there has ben a regression in parenting skills reported by Achieva and the Plaintiffs' developmental service providers. (Ex. N, *Permanency Review Order*). The Family Court Judge ordered in January 2024 that the new permanent placement goal is to have Minor Plaintiff K.H. placed with a Legal Custodian. *Id.*

Plaintiffs filed this lawsuit in federal court alleging various violations of federal law. All allegations arise from the Family Court proceeding which began in November of 2021 and are ongoing. The Allegheny County Defendants have filed a MOTION TO DISMISS. This BRIEF is filed in support.

## II.    ARGUMENT

### 1.  Statute of Limitations

The statute of limitations for claims brought under §1983 follows the state law statute of limitations for torts. *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573 (1989); *Sameric Corp. Of Delaware, Inc. v City of Philadelphia,* 142 F.3d 582, 599 (3d Cir. 1998). In Pennsylvania that is two years. 42 Pa.C.S.A. § 5524. In this district, it has repeatedly been held that Pennsylvania's two year statute of limitations for personal injury claims governs claims under both the Rehabilitation Act and Title II of the ADA. *Benedum v. Franklin Township Recycling Center,* 1996 WL 679402, *6 (W.D.Pa.1996) *Toney v. U.S. Healthcare, Inc.,* 840 F.Supp. 357, 359 (E.D.Pa.1993), *aff'd,* 37 F.3d 1489 (3rd Cir.1994). In the Third Circuit, a statute of limitations defense may be raised in a Rule 12(b)(6) motion to dismiss, if the complaint facially shows that it was filed after the limitations period had passed. *Weiss v. Bank of Am. Corp.,* 153 F. Supp. 3d 831, 837–38 (W.D. Pa. 2015), citing *Robinson v. Johnson,* 313 F.3d 128 (3d Cir.2002); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994).

Plaintiff K.H. was only added to this lawsuit on June 5, 2024, when Plaintiffs filed their First Amended Complaint. (ECF #12, *Amended Complaint*). Accordingly, all §1983, ADA, and Rehab act claims brought by Plaintiff K.H. stemming from alleged acts taken prior to June 5, 2022, must be dismissed with prejudice.

### 2.  Younger Abstention

The *Younger* abstention doctrine applies here. *Younger* abstention applies when: (1) the ongoing state proceedings are judicial in nature, (2) the proceedings implicate important state interests, and (3) the federal plaintiff has an adequate opportunity in the state

proceedings to raise constitutional challenges. *Miller v. Mitchell*, 598 F.3d 139, 145–46 (3d Cir. 2010). The "fair administration of child custody and parental rights proceedings" is undoubtedly an important state interest. *McDaniels v. New Jersey Div. of Youth & Family Servs.*, 144 F. App'x 213, 215 (3d Cir. 2005) (citing *Moore v. Sims*, 442 U.S. 415, 427 (1979). Indeed, it is common for federal courts to apply *Younger* abstention in suits against child welfare agencies such as CYF where child-custody determinations are still being worked out in state court. *E.g.*, *Shallenberger v. Allegheny Cnty*, No. CIV 2:20-cv-00073-NR, 2020 WL 1465853, at *5 (W.D. Pa. March 26, 2020).

Here Plaintiffs are activity involved in Family Court child-custody and dependency proceedings. Plaintiffs have an adequate and available forum in Family Court to bring the grievances they raise in this federal lawsuit. The outcome of the state court proceeding is of no significance under *Younger*. What matters is that Plaintiffs had a chance to raise their challenges, not whether they actually did so or succeeded. *Shallenberger v. Allegheny Cnty*, No. CIV 2:20-cv-00073-NR, 2020 WL 1465853, at *5 (W.D. Pa. March 26, 2020). *See also* *Lazaridis v. Wehmer*, 591 F.3d 666, 671 (3d Cir. 2010) ("[A]lthough [plaintiff] did not raise his federal constitutional claims in state court and would likely be precluded from doing so now, this does not save his claim."). This Court's taking jurisdiction of this case would improperly interfere with the Family Court proceeding. This Court should abstain at this time.

### 3. Rooker- Feldman

The *Rooker–Feldman* doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923); *District of Columbia Court of Appeals v.*

*Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983). Under *Rooker-Feldman*, federal courts "lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). The *Rooker-Feldman* doctrine applies when:

(1)    the plaintiff lost in state court;
(2)    the plaintiff complains of injuries caused by state-court judgments;
(3)    the judgments were rendered before the federal lawsuit was filed; and,
(4)    the plaintiff asks the federal district court to review and reject the state court judgment.

*Id.* at 166. *Rooker-Feldman* doctrine applies to federal lawsuits implicating child-custody decisions. *E.g.*, *Young v. Dubow*, 411 F. App'x 456, 458 (3d Cir. 2011) (holding that *Rooker-Feldman* applied when the federal complaint stemmed from an adverse state-court custody decision); *Marran v. Marran*, 376 F.3d 143, 150–51 (3d Cir. 2004) (concluding that the district court lacked jurisdiction under *Rooker-Feldman* over claims that were inextricably intertwined with the state-court adjudication of a child-custody matter, in which a ruling for the plaintiff would have necessarily required a finding that the state court erred in its custody decision).

> A federal lawsuit is the functional equivalent of an appeal from a state court judgment when:
> (1) the claim was actually litigated before the state court; or,
> (2) the claim is inextricably intertwined with the state adjudication.

*ITT Corporation v. Intelnet International Corporation*, 366 F.3d 205, 210 (3d Cir. 2004).

Almost any claim that is actually litigated will also meet the inextricably intertwined test. *Id.* A claim is inextricably intertwined with the state court proceeding when "federal relief can only be predicated upon a conviction that the state court was wrong." *Parkview Assoc. v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000). "*Rooker–Feldman* applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine

that the state court judgment was erroneously entered, or must take action that would render the state judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir. 1996).

To determine whether a particular claim for federal relief is inextricably intertwined with a state court decision, this Court looks at "the questions of state law that the state court was required to reach in order to render its decision." *Desi's Pizza v. City of Wilkes–Barre,* 321 F.3d 411, 421 (3d Cir. 2003).

Plaintiffs assert in their Amended Complaint that the County Defendants had no basis to remove the Minor Child from their care. This is not supported by the record. The Family Court issued final orders authorizing the removal of the Child through an ECA. The Family Court adjudicated the Minor Plaintiff dependent; determined custody; established visitation; and, among many other things, set requirements for evaualuations and supervision for all Plaintiffs. (Ex. C through O, *Family Court Orders*.).

The Juvenile Act permits a court to adjudicate a child dependent if the child is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. 42 Pa.C.S. § 6302(1). "[T]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re J.C.,* 5 A.3d 284, 289 (Pa. Super. Ct. 2010). The Family Court adjudicated the Minor Child dependent, thus finding the Minor Plaintiff was without proper parental care or control.

All of *Rooker-Feldman's* prongs exist. The Plaintiffs in their federal lawsuit are now asking for declaratory and injunctive relief as to all Counts. (Am. Compl. p. 37). This

Court cannot find that the Allegheny County Defendants' actions unconstitutional without undermining the Family Court decisions. Plaintiffs' federal claims are inextricably intertwined with those decisions. They must be dismissed.

### 4. Individual Defendants Entitled to Absolute Immunity

*i.   Absolute Immunity – Prosecutorial*

Under its historical and functional approach, the Supreme Court has held that certain officials "functioning as integral parts of the judicial process" are absolutely immune from civil suits brought under § 1983. *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992). Unlike a qualified immunity analysis, which may involve a factual inquiry,... absolute immunity can be addressed as a threshold issue. *B.S. v. Somerset Cty.*, 704 F.3d 250, 261 n.22 (3d Cir. 2013). Public officials who perform "special functions" may be entitled to absolute immunity. *Id.* at 261. Justifications for according absolute immunity to prosecutors also apply to child welfare employees. *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 496-497 (3d Cir. 1997). Absolute immunity for child welfare employees is appropriate when the employee formulates and presents recommendations to the court regarding a child's custody determination. *B.S.*, 704 F.3d at 262–63. The Third Circuit has said that:

> absolute immunity protects not only caseworkers' presentations of their recommendations to a court, but also their "gathering and evaluation of information" to formulate those recommendations and to prepare for judicial proceedings. To hold otherwise, we explained, would expose caseworkers to liability "for the observations and judgments that were the necessary predicate" for their protected recommendations, which would "eviscerate the immunity they did receive and undermine the purposes sought to be advanced by the grant of absolute immunity."

*Id.* at 269 (quoting *Ernst,* 108 F.3d at 498).

*ii.  Absolute Immunity – Witnesses*

Witnesses are absolutely immune for their testimony, including government officials who testify about their official duties.  *Briscoe v. LaHue,* 460 U.S. 325, 326, 103 S.Ct. 1108 (1983).  This absolute immunity extends to caseworkers who testify in dependency proceedings. *Pelino v. HensGreco,* Civ. No. 161140                    2017 WL 321494 *4  (W.D. Pa. Jan. 23, 2017)* (holding that CYF child welfare workers were immune from claims based on their testimony at the dependency hearings,) *aff'd* *Pelino v. Hens–Greco, 693 Fed.Appx.* 104, 107 (3d Cir. 2017).

*iii.  Absolute Immunity – Seeking and Acting Pursuant to Court Order*

The individual Allegheny County Defendants are absolutely immune for any alleged actions taken in seeking a court order and actions taken pursuant to a court order.  *B.S. v. Somerset Cty.,* 704 F.3d at 264–271 (holding that DCP&P caseworkers were absolutely immune for actions taken in seeking a court order transferring custody from one parent to another). *Hamilton v. Leavy,* 322 F.3d 776, 782–83 (3d Cir. 2003) ("[A]ction taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages.")

*iv.  Immunity Under the Child Protective Services Law*

The Pennsylvania Child Protective Services Law also provides immunity from civil and criminal liability  for "any official or employee of a county agency who refers a report of suspected abuse to law enforcement authorities or provides services under [the CPSL]". 23 Pa.C.S.A. § 6318(a). Section 6318 provides additional immunity for county agency officials and employees for their activities relating to "cooperating with an investigation" and from "testifying in a proceeding arising out of an instance of suspected child abuse". 23 Pa.C.S.A. §

6318(a). CYF employees are entitled to a presumption of good faith in their activities, which must be judged pursuant to an objective standard rather than by alleged motives or allegations of maliciousness. 23 Pa.C.S.A. § 6318(b); *Jones v. Snyder,* 714 A.2d 453 (Pa.Super. Ct. 1998).

Plaintiffs' claims against the individual County Defendants are premised on alleged actions taken by them that fall within one or more of the above grants of absolute immunity:

> (1)    in  a prosecutorial capacity in preparation for or during judicial proceedings;
> (2)    while testifying during a Court proceeding;
> (3)    pursuant to a valid Court Order.

(*See* ECF #12, *generally, Amended Complaint.*) Plaintiffs' 14th Amendment Procedural Due Process claim against the individual Defendants is solely based on allegedly presenting "false negative information about the Hackneys' parenting abilities at court hearings."  (ECF #12 ¶189, *Amended Complaint*).  All of the individual Allegheny County Defendants are entitled to absolute immunity on all claims.

## 5.  Individual Defendants Entitled to Qualified Immunity

Even if the Allegheny County Individual Defendants were not entitled to absolute immunity, they are entitled to qualified immunity.  State actors, including child welfare agency officials, *see, e.g.*, *Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186 (3d Cir. 2009), are entitled to qualified immunity as to federal claims "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The qualified immunity analysis is two-pronged:

> (1) whether the plaintiff alleged the deprivation of a
> constitutional right; and,
>  (2) whether the right was clearly established at the time of the
> conduct.

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Government officials, such as child welfare caseworkers, are "generally shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). [R]easonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596 (2004) (per curiam). Reasonable, must be not be judged from the perfect view of hindsight. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

If the first requirement – violation of a constitutional right – does not exist, the case goes no further because the plaintiff has failed to state a claim upon which relief can be granted. *Saucier v Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001). If the case proceeds to the second requirement – clearly established -  the inquiry must be undertaken in the specific context of the case and not as a broad general proposition. *Id*. Specificity is important. *Kisela*, 138 S. Ct. at 1152–53. Courts not to analyze prior precedent with such a broad brush as to make the concept of clearly established law so vague as to be essentially meaningless. *Id.*

Here, Plaintiffs' allegations against the Allegheny County Defendants fail to establish that any constitutional rights were violated. A review of the Family Court records show that the County Defendants acted upon a ChildLine report, as they are authorized to do under the Child Protective Services Law.  The matter was turned over to a Family Court judge who made adjudications and placed this family into the services of Allegheny County CYF.  The Family Court records show that no actions by the Allegheny County Defendants rose to a

constitutional level and no constitutional rights were violated.   Thus, the claims against the individual defendants go no further.

Even if this Court were to consider the second prong of qualified immunity – clearly established – the case falls at this point.  The Family Court record shows that the individual defendants followed the Child Protective Services Law and acted pursuant to Family Court orders.  There is no clearly established federal law that has been violated.  The individual Allegheny County Defendants are entitled to qualified immunity.

### 6. Lack of Personal Involvement Sufficient to Support §1983 Claims

Plaintiffs' §1983 claims brought against the Individual Allegheny County Defendants Reed, Veselicky, Haney, Embar, and Anderson-Rhones must be dismissed for lack of personal involvement.  Claims for money damages for violation of constitutional rights cannot be based on vicarious liability or *respondeat superior;* "to state such a cause of action against a government official under Section 1983, the plaintiff must allege that the individual defendant was *personally involved* in the alleged wrongs. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937 (2009) (emphasis added). Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own *individual* actions, has violated the Constitution. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis added). Liability in claims asserted under § 1983 requires *personal involvement* in the alleged wrongs.  *Hatfield v. Berube*, 714 F. App'x 99, 102 (3d Cir. 2017) (emphasis added). Allegations of a defendant's participation or actual knowledge and acquiescence in the alleged wrongdoing must be made "with appropriate particularity." *Rode*, 845 F.2d at 1207.

Plaintiffs have failed to sufficiently plead how each individual Allegheny County Defendant was personally involved in each of the §1983 claims filed against them. Accordingly, these claims against the individual Allegheny County Defendants must be dismissed.

### 7. Failure to State a Monell Claim Against Allegheny County

Count III of Plaintiffs' Amended Complaint asserts an "Unconstitutional Custom, Policy or Practice" against Allegheny County through 42 U.S.C. § 1983. However, Plaintiffs do not specify of plead any constitutional right that has been violated. Section 1983 is an enabling statute which does not create any substantive rights. Rather, it provides private citizens with a remedy for the violation of federal constitutional or statutory rights by a state actor. *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir. 2000). To state a claim under Section 1983, plaintiffs must allege that a defendant acting under color of state law deprived plaintiffs of a federal constitutional or statutory right. *Gruenke,* 225 F.3d at 298. Federal law requires that in order to hold a municipal government liable for a constitutional violation of someone's rights, more is required than just pleading a constitutional violation. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 692 (1978). *Monell* requires that Plaintiff establish 1) a constitutional violation, 2) a policy or custom of the municipality, and 3) a causal connection between the two. *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir. 2000) (*emphasis added*) (a Section 1983 plaintiff, "must demonstrate that the violation of his rights was caused by either a *policy* or a *custom* of the municipality.") As stated above, Plaintiffs have not satisfied prong 1 of this analysis. Accordingly, Count III should be dismissed with prejudice.

Even if Plaintiffs had established a constitutional violation, they have not sufficiently pled a custom or policy of Allegheny County. "Policy is made when a 'decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom has been characterized as a practice that, while not formally adopted as a municipal policy, is so pervasive that it carries with it, "the force of law." *Natale*, 318 F.3d at 584 (quoting *Bd. of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)). If a municipal policy or custom has been adequately identified, a plaintiff must then demonstrate that, "through its *deliberate* conduct, the municipality was the '*moving force*' behind the injury alleged." *Berg v. County of Allegheny*, 219 F.3d at 275 (emphasis added). "If . . . the policy or custom does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Id.* (quoting *Bd. of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997)). As such, "[t]he burden on a plaintiff seeking to establish municipal liability in a § 1983 claim is quite high." *King v. County of Gloucester*, 302 Fed. Appx. 92, 99 (3d Cir. 2008).

Plaintiffs have not sufficiently pled facts to support the assertion that a custom or policy of Allegheny County was the moving force behind any of their §1983 claims. Count III of Plaintiffs' Amended Complaint states that Allegheny County engaged in a scheme to deprive Hackneys of the custody of their daughter. (Am. Compl. ¶192.) Plaintiffs have not cited to any specific Allegheny County written policy that would reflect any of the assertions made in this paragraph. Liability can attach only if Plaintiffs can successfully "identify a custom or policy, and specify what exactly that custom or policy was," *McTernan v. City of*

*York, Pa.,* 564 F.3d 636, 658 (3d Cir. 2009), and that "bare recitation of the words 'custom and/or policy,'" *Pittman v. Martin,* 569 F. App'x 89, 92 (3d Cir. 2014), or "vague assertions of policy are not sufficient to impose liability under Monell," *Tripodi v. N. Coventry Twp.,* 616 F. App'x 521, 523 (3d Cir. 2015) (citing *Groman v. Twp. of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995)). *See also Bayer v. Monroe Cty. Children & Youth Servs.,* 414 F. App'x 431, 437 (3d Cir. 2011) (rejecting a conclusory allegation that defendant County has a policy, custom, or practice of 'seiz[ing] minor children from their parents without prior judicial authorization, and without any reasonable basis to believe such a seizure is necessary to protect children from imminent harm'" as insufficient to state a claim). Furthermore, Plaintiffs have failed to plead facts sufficient to show that any alleged Allegheny County policy or custom was the moving force behind the injury alleged.

Plaintiffs raise a failure to train claim against Allegheny County in Count IV of the Amended Complaint in a general and conclusory fashion. (Am. Compl. ¶193-197). This is not enough to plead failure to train. In order to establish liability on a failure-to-train claim under § 1983, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) Establishing municipal liability on a *Monell* claim for inadequate training is difficult. *Reitz v. County of Bucks,* 125 F.3d 139, 145 (3d Cir. 1997). Generally, deficient training can only amount to the requisite deliberate indifference, "where the failure to train has caused a pattern of violations." *Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000). The entire

Amended Complaint only references alleged actions specifically taken within the context of Plaintiffs' own Family Court and dependency proceedings.

Accordingly, all counts asserting §1983 claims against Allegheny County must be dismissed with prejudice.

**8. Plaintiffs' Complaint Fails to Set Forth Viable Constitutional Claims**

Plaintiffs' Amended Complaint also fails to set forth viable federal constitutional claims.

*i.  14th Amendment Procedural Due Process*

For a procedural due process claim to survive a motion to dismiss, a plaintiff is required to plead facts supporting allegations that:

(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property;' and,

(2) the procedures available to him did not provide 'due process of law".

*Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000). If there is a process that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants. *McDaniels v. Flick,* 59 F.3d 446, 460 (3d Cir. 1995).

Due process is implicated when protected interests such as a parent's liberty interest "in the custody, care and management of [his or her] children" are subjected to intrusion by the state. *Croft v. Westmoreland Cnty. Children & Youth Servs.,* 103 F.3d 1123, 1125 (3d Cir. 1997). An individual must ordinarily be afforded "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" before any such intrusion. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545,

552, 85 S.Ct. 1187 (1965)). The extent of that obligation is, a flexible one, based upon a balance of several factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335, 96 S.Ct. 893.

Thus, when a parent complains of state action intruding on the "parent-child relationship," the parent's interest must "be balanced against the state's interest in protecting children suspected of being abused." *Miller*, 174 F.3d at 373. While the question of what constitutes due process is necessarily rooted in the circumstances of a given case, it is axiomatic that at least some process is required when a "state seeks to alter, terminate, or suspend a parent's right to the custody of [her] minor children." *McCurdy v. Dodd*, 352 F.3d 820, 827 (3d Cir. 2003).

The Family Court record shows that hearings were held before a state court judge, and the Family Court Judge issued an ECA before the Minor Child Plaintiff was removed. This record also shows that before the Minor Child was adjudicated dependent the Family Court Judge held a hearing. This record shows that the requirements of federal procedural due process were satisfied. Accordingly, Plaintiffs have failed to state a claim of 14th Amendment due process violation against Allegheny County Defendants. The claim must be dismissed with prejudice.

ii.    14th Amendment- Substantive Due Process

Count I alleges a substantive due process claim against the Individual Allegheny County Defendants.  The Supreme Court has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Santosky v. Kramer, 455 U.S. 745, 753 (1982)*. However, this Fourteenth Amendment liberty interest must be balanced against the government's compelling interest to protect children, and "does not include a right to remain free from child abuse investigations." *Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997)*.  In the context of a child welfare suit, a substantive due process claim requires "decision-making by a social worker that is so clearly arbitrary" that it "shock[s] the conscience." *B.S. v. Somerset Cty., 704 F.3d 250, 267 (3d Cir. 2013)* (quoting *Miller v. City of Philadelphia, 174 F.3d 368, 375-76 (3d Cir. 1999)* ("[A] social worker acting to separate parent and child … rarely will have the luxury of proceeding in a deliberate fashion … As a result, … the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference and reach a level of gross negligence or arbitrariness that indeed '**shocks** the **conscience**.'").    This requires that a plaintiff must demonstrate that the government action "exceed[ed] both negligence and deliberate indifference, and reach[ed] a level of gross negligence or arbitrariness that indeed 'shocks the conscience.' " *Id.* at 375–76. When a government actor possesses "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse," his or her removal of a child from the parents' custody does not constitute an infringement on the parents' rights to familial integrity. *Croft, 103 F.3d at 1126*.

The facts establish there is no conscious-shocking government action. The Allegheny County Defendants became involved in this case because of a report that their child was severely malnourished. This is a serious allegation that requires investigation and action to protect the Minor Child. The Allegheny County Defendants did not act on their own. The Family Court record shows that this matter was reviewed by the Court at each stage and continues to be under the jurisdiction of the Family Court Judge.

Given these facts, the Allegheny County Defendants had considerable evidence to give rise to a reasonable suspicion that the Minor Child was in imminent danger when seeking the ECA, at the Shelter Hearing stage, and at the dependency adjudication stage. This reality is supported by the fact that the Family Court adjudicated the child dependent. The actions of the Allegheny County Defendants cannot shock any reasonable conscious. *B.S. v. Somerset County,* 704 F.3d 250, 267–68 (3d Cir. 2013) (applying *Miller* and holding that child welfare worker's actions in obtaining court order and removing daughter from mother's custody did not "shock the conscience"). The substantive due process claim must fail.

### iii.    *Section 1985 Conspiracy – Count V*

In order to set forth a §1985(3) cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1377 (3d Cir. 1992); *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir. 1989). A civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. *Oatess v. Sobolevitch,* 914 F.2d 428, 432 n. 8 (3d Cir. 1990).

The essence of a conspiracy is an agreement or concerted action between individuals. *D.R. by L.R.,* 972 F.2d at 1377. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. . *D .R. by L.R.,* 972 F.2d at 1377; *Rose,* 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. *Deck v. Leftridge,* 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann,* 926 F.2d 1396, 1405, n. 16 (3d Cir. 1991). Furthermore, to state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997).

Plaintiffs do not plead any "conspiracy" above the speculative level. Plaintiffs present broad and conclusory language asserting that Defendants have conspired to deprive them of constitutional rights without identifying any conduct or act in furtherance of a conspiracy. (Am. Compl. ¶¶199-200). Accordingly, Plaintiffs' conspiracy claim should be dismissed with prejudice.

### 9. Plaintiffs Have not Pled ADA or Rehab Act Claims

Plaintiffs' claims against Allegheny County for disability discrimination under both the Americans with Disabilities Act (ADA) and Rehabilitation Act should be dismissed

because Plaintiffs fail to allege they were either excluded from participation in or denied the benefits of Allegheny County's services, programs, or activities.

The Third Circuit has explained that, in order to state a claim under Title II of the ADA, the plaintiff must allege that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. *Brown v. Deparlos,* 492 F. App'x 211, 215 (3d Cir. 2012). *See also Kokinda v. Dep't of Corr.,* 2017 WL 3897378, at *8–9 (W.D. Pa. 2017), report and recommendation adopted as modified, 2017 WL 3912350 (W.D. Pa. 2017), aff'd, 779 F. App'x 944 (3d Cir. 2019).

Similarly, "in order to state a claim under the Rehabilitation Act, Plaintiff must prove that: 1) she is disabled; 2) that she is 'otherwise qualified [,]' [with or without reasonable accommodations,] for the benefit sought or for participation in the program; 3) that she was excluded from participation in, denied the benefit of, or subject to discrimination 'solely by reason of ... [her] disability;' and 4) that the program or activity receives federal financial assistance." *Graham v. Pennsylvania Dep't of Health Div. of Vital Recs.,* 2021 WL 8101375, at *6–7 (W.D. Pa. 2021), report and recommendation adopted, 2022 WL 1173191 (W.D. Pa. Apr. 20, 2022) (*citing  Bowers v. NCAA,* 9 F. Supp. 2d 460, 490 (D.N.J. 1998) (citing cases).

"The elements of a Rehabilitation Act claim are 'identical' to that of an ADA claim...except that under the Rehabilitation Act, the defendant must have discriminated against the plaintiff "solely" because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a motivating factor in the discrimination." *Id.*

At the crux of Plaintiffs' claims against Allegheny County is a "recommend[ation]" by Defendant Jenna Reed, a CYF caseworker, to have "the Hackneys...evaluated for services by Achieva," which Plaintiffs identify as "a non-profit organization that provides services to individuals with disabilities." (Compl. ¶82.) This is the only program, service, or activity identified throughout Plaintiffs' Complaint as allegedly impacted by Defendant Allegheny County's actions (i.e., in the alleged delayed referral of the Hackneys to Achieva). (Comp. ¶¶82 – 83, 99 – 100, 102, 110, 125, 133, 138 – 143, 148, 157 – 158, 166, 170, 172.)

However, Achieva is not an Allegheny County program, service, or activity. Plaintiffs allege that it is a "non-profit organization" (Comp. ¶82), and a review of Achieva's website shows no connection to Allegheny County. (https://www.achieva.info/.) Plaintiffs do not (and cannot) allege that they were denied access to a program or activity that receives federal funding given that Allegheny County and Achieva are separate entities. Under the ADA, to state a cause of action a plaintiff must allege that they were "denied the benefits of some public entity's services, programs, or activities." *See Brown, supra.* Similarly, under the Rehabilitation Act, a plaintiff must allege that they were excluded from participation in a program or activity that receives federal funding. *Graham, supra.* Plaintiffs cannot satisfy the elements of their cause of action under either statute given that they do not identify an Allegheny County program, service, or activity, but merely reference a delayed referral to an outside entity.[2] For this reason, Plaintiffs' claims under both the ADA and Rehabilitation Act should be dismissed with prejudice.

---

[2] It should be noted that even after the referral to Achieva was accomplished, "the parents were on the Achieva waitlist" (Compl. ¶102) and were not immediately placed in the program, belying any claim that a referral would have resulted in guaranteed and/or immediate services by Achieva.

### III.    CONCLUSION

Defendants respectfully request that this Honorable Court grant the MOTION TO DISMISS and dismiss the Amended Complaint in its entirety with prejudice.

Respectfully submitted,

*/s/ Frances Marie Liebenguth*
Frances Marie Liebenguth
Assistant County Solicitor
Pa. I.D. #314845
(412) 350-1108
Frances.Liebenguth@alleghenycounty.us

*/s/ Jake Lifson*
Jake Lifson
Assistant County Solicitor
Pa. I.D. #201384
(412) 350-4551
Jake.Lifson@alleghenycounty.us