IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW and LAUREN HACKNEY, individually and on behalf of their minor daughter, K.H., | ) ) ) ) | |
| | ) | No. 2:24-cv-00472-WSH |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ALLEGHENY COUNTY, JENNA REED, MICHELLE VESELICKY, MICHELE HANEY, EMMA EMBAR, and MONICA ANDERSON-RHONES, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I) Factual Summary ................................................................................................................ 1

II) Argument ......................................................................................................................... 4

   a. K.H.'s claims are not barred by the statute of limitations.................................................. 4

   b. This court should not exercise Younger abstention ........................................................... 4

   c. The Rooker-Feldman doctrine does not apply to the Hackneys' claims............................. 5

   d. The Hackneys have plausibly pled Fourteenth Amendment due process claims ............... 6

      i. Substantive due process ................................................................................................ 7

      ii. Procedural due process ................................................................................................ 9

   e. The Hackneys have pled claims for civil conspiracy under 42 USC § 1985.................... 10

   f. Individual Defendants were personally involved in the violation of the Hackneys' rights 11

   g. Individual Defendants are not immune from suit ............................................................ 13

      i. Witness immunity ....................................................................................................... 13

      ii. Seeking and acting pursuant to court order................................................................. 13

i

iii.   Child Protective Services Law immunity ................................................... 14

iv.   Prosecutorial immunity ............................................................................ 14

v.   Qualified immunity .................................................................................. 17

h.   Allegheny County is subject to municipal liability for violations of the Hackney's constitutional rights........................................................................................... 18

i.   The Hackneys have plausibly pled claims against Allegheny County for violations of the ADA and Rehabilitation Act ...................................................................... 20

III)  CONCLUSION....................................................................................................... 23

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW and LAUREN HACKNEY, individually and on behalf of their minor daughter, K.H., | ) ) ) | |
| | ) | No. 2:24-cv-00472-WSH |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ALLEGHENY COUNTY, JENNA REED, MICHELLE VESELICKY, MICHELE HANEY, EMMA EMBAR, and MONICA ANDERSON-RHONES, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

AND NOW, come the Plaintiffs, ANDREW and LAUREN HACKNEY, on their own behalf and on behalf of their minor daughter, K.H., by and through their attorneys, MARGARET S. COLEMAN, ALEC B. WRIGHT and the law firm of O'Brien, Coleman and Wright, LLC and hereby file the within Response to Defendants' Motion to Dismiss Second Amended Complaint as follows:

I)    Factual Summary[1]

Plaintiffs Andrew and Lauren Hackney (the "Hackneys") both have intellectual disabilities. ECF # 26, at ¶25.  In October 2021, they sought medical treatment for their infant daughter, Plaintiff K.H.. Id. at ¶¶29-31.  Even though the Hackneys had an established history of

---

[1] The facts in this case are extensive. The Hackneys have included only a brief summary due to page limitations and the number of issues raised by Defendants. A complete recitation of the facts is set forth in the Hackneys' Second Amended Complaint and is incorporated herein by reference. *See* ECF # 26.

appropriately caring for K.H., CYF[2] assumed, based solely on the Hackneys' intellectual disabilities, that they had neglected K.H. and were unable to care for her. Id. at 28, 36, 52. Because of their disabilities, CYF took K.H. from the Hackneys and placed her in foster care with a non-disabled couple. Id. at ¶¶2, 74, 270.

CYF's sole basis for taking custody of K.H. was their discriminatory belief that the Hackneys' intellectual disabilities prevented them from properly caring for her. Id. at ¶¶36, 52, 64, 107, 110, 129, 143, 174, 259, 263. For more than three years, the Hackneys have followed CYF's ever-increasing extra-judicial demands and have proven that they are able to care for their daughter. Id. *passim*, *see e.g.* ¶¶82, 84, 87, 97, 100-104, 111, 116-117, 136, 146, 165, 201, 231. They have complied with court orders, spent hundreds of hours driving to weekly supervised visitations, worked with parenting coaches and disability support specialists, submitted to psychological evaluations and intelligence tests, attended and testified at hearings, and spent thousands of dollars on attorneys. Id. *passim*, *e.g.* ¶¶3, 115, 165, 206-208, 214, 220, 229, 232.

Even though the Hackneys have proven that they can care for K.H., Allegheny County CYF and its caseworkers have actively undermined them and prevented them from reuniting with their daughter. Id. *passim*, *see e.g.* ¶¶85, 86, 90, 108, 110, 116, 117, 130, 138, 149, 177-178, 183, 184, 186-87, 193, 198, 199, 223-224, 231, 240. CYF has routinely falsified or misrepresented evidence that the Hackneys' disabilities prevent them from caring for K.H., while suppressing evidence that the Hackneys are able to parent their daughter without help. *See e.g.* id. at ¶¶66-72, 94-96, 110, 112, 123-127, 132-133, 138-140, 143, 150-151, 156, 167, 170, 193, 200, 238, 249, 251. CYF has insisted that the Hackneys take part in disability-related services and then prevented them from receiving those services. *See e.g.* id. at ¶¶ 105, 110, 111, 114, 133-134, 162, 175-6, 187,

---

[2] For purposes of this factual summary, Defendants are collectively referred to as "CYF." The participation of the individually named defendants ("Individual Defendants") is addressed in the section on personal involvement.

204, 213. CYF has routinely ignored court orders and opposed efforts toward reunification. *See e.g.* id. at ¶¶ 110, 131, 148, 166, 174, 177-178, 188-189, 193, 223, 231, 240.

CYF has imposed onerous expectations and requirements on the Hackneys that go well beyond ordinary parental expectations and are not compelled by any court order. *See e.g.* id. at ¶¶4, 97-104, 116-119, 165, 168, 201-221, 221, 229, 236, 257. CYF has told the Hackneys that K.H. will be put up for adoption if they do not comply. *See e.g.* Id. at ¶¶99, 117, 201. CYF reports the Hackneys as "non-compliant" when they fall short of its unreasonable demands. Id. at ¶¶209, 210, 212, 220, 221. When they meet those demands, CYF raises the bar on its own accord and demands more. Id. at ¶¶5, 213, 216-221, 256. CYF's expectations and requirements have overwhelmed the Hackneys' limited resources and pushed them into financial ruin. Id. at ¶¶232-237. In response to the Hackneys' distress, CYF has attempted to transfer permanent legal custody of K.H. to her non-disabled foster parents, who no longer want her. Id. at ¶¶ 252-253. As a result of CYF's actions, the Hackney family has been decimated and three-year-old K.H. has no permanent home. Id. at ¶¶ 254-255.

Defendants' efforts to destroy the Hackney family are part of a longstanding Allegheny County policy of removing children from intellectually disabled parents for the purpose of placing them with non-disabled people. Id. at ¶¶ 15-22. The tactics Defendants have used against the Hackneys have been regularly used by Allegheny County CYF caseworkers against other intellectually disabled parents since at least 2017. Id. at ¶21. Allegheny County has persisted in this policy despite knowing that it violates the constitutional and statutory rights of intellectually disabled parents. Id. at ¶22.

II)     Argument

   a.  *K.H.'s claims are not barred by the statute of limitations*

Defendants argue that Plaintiff K.H.'s claims are barred by the statute of limitations. ECF # 31 at 4. K.H. is three years old. See ECF # 26 at ¶23. Statutes of limitations for minors do not begin to run until the minor reaches the age of eighteen. *See* Jeffery Y. v. St. Marys Area Sch. Dist., 967 F. Supp. 852, 855 (W.D. Pa. 1997) (*citing* 42 Pa. Cons.Stat. Ann. § 5533(b)). K.H.'s statute of limitations will not begin to run for another fifteen years. Her claims should not be dismissed on this basis.

   b.  *This court should not exercise Younger abstention*

Defendants argue that this Court should decline jurisdiction over the Hackneys' claims based on the Younger abstention doctrine. ECF # 31 at 5. "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005) (*citing* Younger v. Harris, 401 U.S. 37 (1971). "However, abstention 'rarely should be invoked' . . . and is 'only appropriate in a few carefully defined situations.'" Id. (*quoting* Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992), Gwynedd Properties, Inc. v. Lower Gwynedd Township, 970 F.2d 1195 (3d Cir.1992))(*cleaned up.*)

"Younger abstention is only appropriate where *the precise claims* raised in federal court are available in the ongoing state proceedings. Where the availability of a claim in state court is questionable, [] abstention jurisprudence weighs in favor of retaining jurisdiction." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 413 (3d Cir. 2005)(*emphasis added*). The claims in this lawsuit are brought under federal disability and constitutional laws and involve

4

different questions of law and fact than the state court dependency proceedings.  Therefore, the present claims and those in the state court proceedings serve different purposes, involve different legal and factual questions, and are not within the "precision" that is required under <u>Younger</u> for abstention.

Moreover, <u>Younger</u> abstention should not be invoked when a plaintiff seeks monetary damages which are not available through the ongoing state court proceedings.  <u>Id.</u>  Here, the Hackneys seek monetary damages for the violation of their federal statutory and constitutional rights. See ECF # 26 at pg. 47 (Prayer for Relief).  This relief is not available through the Family Court.  Therefore, <u>Younger</u> abstention is not appropriate and the Court should retain jurisdiction.[3] See e.g. <u>Peterson v. Allegheny Cnty.</u>, No. 2:21-CV-00078-CCW, 2022 WL 280948, at *12 (W.D. Pa. Jan. 31, 2022) (rejecting Younger abstention because "while it may be true that Plaintiffs could have raised certain federal constitutional challenges or defenses in the Family Court proceedings, they could not have asserted the particular claims for damages they assert here.").

*c.* The <u>Rooker-Feldman</u> doctrine does not apply to the Hackneys' claims

The <u>Rooker-Feldman</u> doctrine "stands for the proposition that 'federal courts lack jurisdiction over suits that are essentially appeals from state-court judgments.'" <u>Guest v. Allegheny Cnty.</u>, 2020 WL 4041550, at *4 (W.D. Pa. July 17, 2020) (*quoting* <u>Great W. Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 166 (3d Cir. 2010)). "Application of the doctrine is restricted to 'cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting district court review and rejection of those judgments.'"  <u>Id.</u> (*quoting* <u>Exxon Mobil</u>

---

[3] This case is critically different from <u>Shallenberger v. Allegheny Cnty.</u>, No. CIV 2:20-cv-00073-NR, 2020 WL 1465853 (W.D. Pa. March 26, 2020), cited by Defendants. In Shallenberger, the plaintiffs primarily sought "injunctive relief reinstating Plaintiff'[s] ·· parental rights." <u>Id.</u> at 2,9.  The Court found that Younger abstention precluded it from entertaining these injunctive claims but would not preclude damages claims. <u>Id.</u> at 9-10.

Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005)(*alterations in original*). The Rooker Feldman doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court" or "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005).

The Hackneys are not seeking review of the Family Court's orders or an injunction overturning those orders. See Guest at 5. See also ECF # 26 at pg. 47. Moreover, the Hackneys' claims are not inextricably intertwined with the Family Court proceedings because a finding that Defendants' actions violated their constitutional rights would not require a finding that the Family Court's decisions were erroneous.[4] *See* Marran v. Marran, 376 F.3d 143, 154 n.2 (3d Cir. 2004). (*Rejecting* Rooker-Feldman because "finding that the underlying investigation conducted by OCY was constitutionally insufficient would not indicate that the state court wrongly relied upon OCY's recommendations. It would merely mean that [CYF] did not properly perform its job."). *See also* Ernst v. Child and Youth Services of Chester County, 108 F.3d 486, 491 (3d Cir. 1997). As such, the Rooker-Feldman doctrine is inapplicable to this case.

### d. The Hackneys have plausibly pled Fourteenth Amendment due process claims

The "Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." Croft v. Westmoreland Cnty. Child. & Youth Servs., 103

---

[4] For example, a finding that Allegheny County presented false and misleading information to the Family Court would not indicate that the Family Court wrongly relied on that false information; a finding that Allegheny County willfully refused to comply with state court orders would not indicate that the orders themselves were wrongly decided; a finding that Defendants imposed conditions and limitations on the Hackneys' visits that were not required by Family Court's orders would not require any consideration of the validity or appropriateness of those orders

F.3d 1123, 1125 (3d Cir. 1997). The Hackneys have plausibly alleged that Defendants violated their procedural and substantive due process rights.

### i. Substantive due process

Parents have a constitutionally protected liberty interest in the custody, care and management of their children. Croft v. Westmoreland Cnty. Child. & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997). "In determining whether such constitutionally protected interests were violated, the Court 'must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse.'" Harrington v. UPMC, No. CV 20-497, 2022 WL 1606422, at *11 (W.D. Pa. May 20, 2022)(*quoting* Croft). "[T]he government has 'no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse.'" Guest v. Allegheny Cnty., No. CV 20-130, 2020 WL 4041550, at *7 (W.D. Pa. July 17, 2020)(*quoting* Croft at 1125-26). Thus, absent "information available to the defendants at the time [that] would have created an objectively reasonable suspicion of abuse justifying the degree of interference," governmental interference in parents' custody, care and management of their children is an unconstitutional "arbitrary abuse[ ] of power." Harrington at 11 (*quoting* Croft at 1126.)

The Hackneys have plausibly alleged that the information available to Defendants did not create an "objectively reasonable suspicion of abuse" sufficient to justify removing K.H. from their custody. At the time of CYF's initial interference, the information available to Defendants showed that 1) the Hackneys had sought medical care for K.H, 2) healthcare workers were initially concerned about the Hackneys' ability to care for K.H and 3) the Hackneys had demonstrated to the healthcare workers' satisfaction that they could care for K.H. without assistance. ECF #26 at

¶¶ 29-37.  These facts do not give rise to a reasonable belief that the level of intervention CYF sought and obtained (removal of K.H. from the Hackneys' custody) was necessary to protect K.H. from abuse or neglect.

The Hackneys have also plausibly alleged that CYF's removal of K.H. was conscience shocking.   Plaintiffs allege that Defendant Reed deliberately falsified the results of her investigation to bolster her allegations of abuse. ECF # 26 at ¶¶38-55.  Reed's misrepresentations and omissions included, *inter alia*, that: 1) the Hackneys only fed K.H. twice a day (ECF # 26 at ¶ 45); 2) K.H.'s primary caregiver was Andrew Hackney's severely disabled sister who regularly forgot to feed her (Id.); 3) nobody in the Hackney household recognized that K.H. needed medical attention (Id. at ¶53);  4) the Hackneys delayed taking K.H. to the hospital for a week because Andrew Hackney did not want to take time off of work (Id. at ¶54.); and 5) no non-disabled caregiver was available to care for K.H. (Id. at ¶42, 43, 52).

These allegations, "when applied to taking children from their parents would by anyone's definition be patently unlawful and a clearly established substantive due process violation." Dennis v. DeJong, 867 F. Supp. 2d 588, 632 (E.D. Pa. 2011)(holding that caseworker's misrepresentations regarding the safety of infant with birth parents and availability of grandparents as caregivers "exceed both negligence and deliberate indifference, reaching a level of gross negligence or arbitrariness that shocks the conscience. . ."); *See also* Guest (allegations that caseworker made false representations in an emergency custody petition in an effort to "beef up" her allegations of child abuse stated viable substantive due process claim); Miller v. City of Philadelphia, 954 F. Supp. 1056, 1065 (E.D. Pa. 1997), aff'd, 174 F.3d 368 (3d Cir. 1999 (allegations that caseworker misrepresented medical report, induced a third party to falsify records and attempted to suborn perjury shocked the conscience.) *See also* Gajarov v. Allegheny Cnty. Off. of Child., Youth, &

8

Fams., No. 2:20-CV-01017, 2021 WL 140842, at *8 (W.D. Pa. Jan. 15, 2021)(denying motion to dismiss because caseworker's actions could be found to shock the conscience.); Bower v. Lawrence Cnty. Child. & Youth Servs., 964 F. Supp. 2d 475, 486 (W.D. Pa. 2013).

In addition to the misrepresentations and omissions identified above, the Hackneys allege that Defendants continued to unconstitutionally interfere with their parental rights after they took custody of K.H. Parents' fundamental liberty interest in family integrity "does not evaporate simply because they have . . . lost temporary custody of their child to the State." Rather, "[P]arents retain a vital interest in preventing the irretrievable destruction of their family life." Santosky v. Kramer, 455 U.S. 745, 753 (1982). This right includes "regular and appropriate visits" between parents and children in temporary foster care. Williams v. Carros, 576 F. Supp. 545, 547 (W.D. Pa. 1983). The Hackneys allege that Defendants deliberately interfered with their visitation and undermined their efforts to prevent the "irretrievable destruction of their family life" by, *inter alia,* ignoring court orders, presenting false and misleading testimony, suppressing evidence, withholding services, subjecting them to excessive scrutiny and imposing arbitrary and inconsistent restrictions on their contact with K.H. See ECF # 26, *passim*. These allegations would shock the conscience of any reasonable person and are sufficient to plead a plausible claim for substantive due process violations.

ii.    Procedural due process

Because the Hackneys have a constitutionally protected liberty interest in the care, custody and management of K.H., due process guarantees them the opportunity to be heard "at a meaningful time and in a meaningful manner." Miller v. City of Philadelphia, 174 F.3d 368, 373 (3d Cir. 1999). Defendants argue that this requirement has been satisfied through Family Court hearings. ECF # 31 at 17. The Hackneys allege that Defendants' conduct has deprived them of a

meaningful opportunity to be heard at the Family Court proceedings.  Specifically, they allege that Defendants have repeatedly lied under oath, presented false and misleading evidence and concealed evidence showing that they are able to parent K.H. without assistance. *See e.g.* ECF # 26 at ¶¶66-72, 94-96, 110, 112, 123-127, 132-133, 138-140, 143, 150-151, 156, 167, 170, 193, 200, 228-229, 238, 249, 251.  These actions denied the Hackneys a fair hearing in the Family Court. *See* <u>Dennis v. DeJong</u>, 867 F. Supp. 2d 588, 632 (E.D. Pa. 2011)(parents denied due process where caseworker's misrepresentations deprived them of the opportunity to be heard at a meaningful time and in a meaningful manner.); <u>Hardwick v. Cnty. of Orange</u>, 844 F.3d 1112, 1116–17 (9th Cir. 2017)(due process right protecting child against "deliberate government use of perjured testimony and fabricated evidence in the dependency court proceeding" is "beyond debate."); <u>Patterson v. Miller</u>, 451 F. Supp. 3d 1125, 1153 (D. Ariz. 2020), aff'd, No. 20-15860, 2021 WL 3743863 (9th Cir. Aug. 24, 2021)(suppression of evidence in child custody proceeding actionable under § 1983.)

    *e. The Hackneys have pled claims for civil conspiracy under 42 USC § 1985.*

    "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3); see also <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997).  To establish a conspiracy claim under Section 1985, a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United

States." Id. (*citing* United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983) and Griffin v. Breckenridge, 403 U.S. 88 (1971)).

Individuals with disabilities are protected under § 1985. Lake at 688. The Hackneys allege that Defendants have engaged in a conspiracy to deprive them of the custody of their daughter so that a non-disabled couple can adopt her. Contrary to Defendants assertions in their Brief, the Hackneys conspiracy claims are not "speculative." They allege that Allegheny County has a custom of working to end the parental rights of intellectually disabled parents rather than seeking to reunify them with their children. *See infra* re municipal liability. They allege that the numerous caseworkers and supervisors assigned to their case have acted in conformity with this custom because it is widespread and known. *See* Id.; *see also infra re* Individual Defendants' personal involvement. Finally, they have provided a detailed account of the actions taken by each Defendant in furtherance of the conspiracy, including a "transition meeting" at which multiple defendants discussed how to facilitate terminating the Hackneys' parental rights. Id.; ECF # 26 at ¶183. These allegations are more than sufficient to plausibly plead that the Individual Defendants engaged in "concerted action" to violate the Hackneys' rights.

*f.  Individual Defendants were personally involved in the violation of the Hackneys' rights*

Defendants argue that Plaintiffs' have not sufficiently pled how each Individual Defendant was personally involved in the violation of their constitutional rights. ECF # 31 at 12. To the contrary, the Hackneys have alleged that each Defendant committed specific actions which alone, or in conjunction with others' actions, interfered with their constitutional rights to family integrity and procedural due process. For example:

| | |
|---|---|
| Falsely reporting that the Hackney's were unable to safely care for K.H. because of their disabilities, while deliberately concealing information that contradicted this assessment. | **Reed**: ECF # 26 at ¶¶ 38-50, 66-72. 85, 95-6, 105-110, 124-127, 135, 138, 140-141, 172<br><br>**Veselicki**: <u>Id.</u> at ¶¶ 50-54, 56, 124-127, 138, 140-141.<br><br>**Embar**: <u>Id.</u> at ¶¶ 143, 150 -151, 167, 170, 172<br><br>**Haney**: <u>Id.</u> at ¶¶ 143-144, 150-151, 170. 172<br><br>**Anderson-Rhones**: <u>Id.</u> at PP 192-195, 200, 201-221, 223-224, 230, 240, 248-249 |
| Attempting and/or conspiring to terminate the Hackneys' parental rights. | **Reed**: <u>Id.</u> at ¶¶79-80<br><br>**Veselicki**: <u>Id.</u> at ¶¶ 57, 59, 79-80,<br><br>**Embar**: <u>Id.</u> at ¶¶ 178, 183<br><br>**Haney**: <u>Id.</u> at ¶¶ 183, 185<br><br>**Anderson-Rhones**: 183, 223-224 |
| Unilaterally imposing arbitrary and burdensome conditions on the Hackneys' visitation and/or deliberately interfering with their efforts at reunification. | **Reed**: <u>Id.</u> at ¶¶82-83, 97- 104, 116-118, 257<br><br>**Veselicki**: <u>Id.</u> at ¶¶ 82-83, 97-104, 116-117, 257<br><br>**Embar**: <u>Id.</u> at ¶¶168, 177, 257<br><br>**Haney**: <u>Id.</u> at ¶¶ 148, 257<br><br>**Anderson-Rhones**: <u>Id.</u> at ¶¶ 201-221, 257 |
| Conditioning reunification on services which they failed to provide and/or prevented the Hackneys from receiving. | **Reed**: ECF # 26 at ¶¶ 105, 109, 113-14, 134,<br><br>**Veselicki**: <u>Id.</u> at ¶¶ 113-14,<br><br>**Embar**: <u>Id.</u> at ¶¶148, 175-6.<br><br>**Haney**: <u>Id.</u> at ¶¶ 148, 185, 187<br><br>**Anderson-Rhones**: <u>Id.</u> at ¶¶ 194 |

g.  *Individual Defendants are not immune from suit*

i.  <u>Witness immunity</u>

The Hackneys do not assert claims based solely on Individual Defendants' testimony at Family Court hearings.  However, this testimony, even if not independently actionable, supports the plausibility of claims that the Hackneys do assert.  For example, the fact that Individual Defendants testified that the Hackneys' disabilities prevented them from safely parenting K.H. supports the plausibility of their ADA and RA claims that Allegheny County discriminated against them because of their disabilities.  The fact that these Defendants repeatedly testified that the Hackneys were on a waitlist for disability-related services from Achieva, knowing that no referral had been made, supports the plausibility of their ADA and RA claims that Allegheny County failed to reasonably accommodate their disabilities.  The fact that Defendants brazenly lied and suppressed evidence during Family Court hearings supports the Hackneys' claims that such behavior was an established custom within Allegheny County CYF.

ii.  <u>Seeking and acting pursuant to court order</u>

The Hackneys do not assert claims against Individual Defendants for complying with family court orders.  Rather, the Hackneys allege that Defendants knowingly obtained court orders under false pretenses, and then repeatedly violated the portions of the orders which required them to provide services to the Hackneys. *See e.g.* ECF # 26 at ¶¶66-72, 94-96, 110, 112, 123-127, 132-133, 138-140, 143, 150-151, 156, 167, 170, 193, 200, 238, 249, 251 (falsifying, misrepresenting and suppressing evidence.) <u>Id</u>. at ¶¶ 110, 131, 148, 188-89 (ignoring court orders). Defendants do not cite any cases suggesting that they are absolutely immune for knowingly disobeying court orders.  Moreover, Defendants' willful refusal to follow the family courts orders supports the plausibility of the Hackneys constitutional and statutory claims.

### iii. Child Protective Services Law immunity

Individual Defendants argue that they are entitled to "good faith" immunity under the Child Protective Services Law (CPSL). ECF # 31 at 10. It is well established that, "[t]he supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law." Wade v. City of Pittsburgh, 765 F.2d 405, 407–08 (3d Cir. 1985); Martinez v. State of Cal., 444 U.S. 277, 284, 100 S. Ct. 553, 558 n.8 (1980)("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law."); Musko v. McClandless, No. CIV. A. 94-3938, 1995 WL 262520, at *7 (E.D. Pa. May 1, 1995)(Pennsylvania's Mental Health Procedures Act cannot not immunize defendants against claims brought under the Americans with Disabilities Act.) All of Plaintiffs' claims are brought under federal statutes. The Child Protective Services Law cannot immunize Individual Defendants from these claims and the Hackneys' claims should not be dismissed on this basis.[5]

### iv. Prosecutorial immunity

Children and youth services case workers are only entitled to absolute immunity for actions that are "intimately associated with the judicial phase" of the Family Court process. Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 497 (3d Cir. 1997). This includes "all of their actions in preparing for and prosecuting . . .dependency proceedings." Id. This immunity applies *only* in the context of dependency hearings and *does not* extend to "'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." Id. at 497 n.7.

---

[5] Even if the CPSL could bestow immunity from Plaintiffs' federal claims, Plaintiffs have "sufficiently pled facts to raise a reasonable expectation that discovery will reveal evidence of bad faith to overcome the good faith presumption warranting immunity." Harrington v. UPMC, No. CV 20-497, 2022 WL 1606422, at *17 (W.D. Pa. May 20, 2022)

Thus, actions that "fall within the scope of the social workers' administrative functions" and are "part and parcel of their daily workload" are not entitled to immunity. Lasche v. New Jersey, 2019 WL 4727922, at *8 (D.N.J. Sept. 26, 2019), aff'd in part, vacated in part, remanded, No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022)(*quoting* B.S. v. Somerset Cty., 704 F.3d 250, 270 (3d Cir. 2013). [6] Administrative functions still remain administrative even if those actions lead to a family court proceeding. Id. *See also* Gajarov v. Allegheny Cnty., 2021 WL 140842, at 4.

"[O]btaining dismissal based on absolute immunity 'should not be easy travel.' Once asserted, the onus is on the prosecutor to demonstrate 'that absolute immunity should attach to each act he allegedly committed that gave rise to a cause of action.'" Guest v. Allegheny Cnty., No. CV 20-130, 2020 WL 4041550, at *9 (W.D. Pa. July 17, 2020)( *quoting* Fogle v. Sokol, 957 F.3d 148, 160 (3d Cir. 2020)). "The burden is uniquely heavy because "in a motion to dismiss, 'it is the defendant's conduct as alleged in the complaint that is scrutinized.'" Id. (*quoting* Fogle at 161).

The Hackneys allege numerous acts which give rise to their constitutional claims. To receive absolute immunity from these claims, Individual Defendants must establish that each of the acts was related to their "prosecutorial" functions as caseworkers. First, many of the actions took place outside of judicial proceedings and are not, on their face, related to hearings or judicial recommendations. *See e.g.* id. at ¶¶4, 97-104, 116-119, 165, 168, 201-221, 221, 229, 236, 257 (unilaterally imposing conditions on visitation and making extra-judicial demands of the Hackneys); Id. at ¶¶95-96, 167, 195 (soliciting negative feedback from service providers); Id. at.

---

[6] In Lasche, the Third Circuit implicitly rejected the caseworkers' assertion of "absolute immunity" by remanding the plaintiffs' constitutional claims against individual caseworkers. ("The remaining claims against the individual-capacity defendants – those under § 1983 and § 1985(3) premised on First Amendment retaliation as well as the LAD claim – are remanded.") Lasche v. New Jersey, No. 20-2325, 2022 WL 604025, at *9 (3d Cir. Mar. 1, 2022)

¶¶125-126, 138; 228-229 (attempting to conceal positive information from service providers); Id. at ¶¶ 94-96, 140, 143-44, 156, 167, 200, 230 (papering administrative file with negative information). This Court should not infer a motion to dismiss that these actions were prosecutorial, rather than administrative or investigatory.[7]

Moreover, "A prosecutor does not have absolute immunity if he makes false statements in a sworn affidavit in support of an application for an arrest warrant." Guest at 10 (citing Kalina v. Fletcher, 522 U.S. 118, 129-30 (1997)). Similarly, "destroying exculpatory evidence is not related to a prosecutor's prosecutorial function." Id. (quoting Yarris v. County of Del., 465 F.3d 129, 13 (3d Cir. 2006)). Therefore, Individual Defendants are not immune from the Hackneys' charges that they made false statements and suppressed evidence in order to obtain custody of K.H. and interfere with the Hackneys' parental rights. See e.g. ECF # 26 at ¶¶66-72, 94-96, 110, 112, 123-127, 132-133, 138-140, 143, 150-151, 156, 167, 170, 193, 200, 238, 249, 251.

For these reasons, this Court should not grant the Individual Defendants' request for prosecutorial immunity at this stage of the proceedings. Rather, the nature and purpose of their actions should be developed through discovery. If discovery reveals that every action Individual Defendants took toward the Hackneys was for the purpose of preparing for and prosecuting dependency proceedings, those defendants can raise prosecutorial immunity through a motion for summary judgment.[8] See e.g. Guest (denying motion to dismiss where plaintiffs alleged caseworker made false representations in an emergency custody petition in an effort to "beef up"

---

[7] Not only would this be a misapplication of the standards applicable to a motion to dismiss, it would effectively immunize all caseworker activities from judicial review, regardless of their purpose.

[8] Allegheny County's website suggests that CYF caseworkers provide extensive services to families that are unrelated to dependency proceedings. https://www.alleghenycounty.us/Services/Human-Services-DHS/DHS-Offices/Office-of-Children-Youth-and-Families

her allegations of child abuse); <u>Gajarov</u> at 4 (denying motion to dismiss based on absolute immunity where purpose of caseworker's actions was unclear from complaint); *See* <u>Lasche</u> at 8 (absolute immunity defense "more appropriately raised in a summary judgment motion").

### v.  Qualified immunity

Qualified immunity protects government officials from civil liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Guest v. Allegheny Cnty.</u> at *10 (*quoting* <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009).  Thus, qualified immunity depends on, "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was clearly established at the time of the official's conduct." <u>Dennis v. City of Philadelphia,</u> 19 F.4th 279, 287 (3d Cir. 2021) (*internal quotations omitted*).  "A clearly established right is one that is so apparent that every reasonable official would understand that what he is doing is unlawful." <u>Id</u>. (*internal quotations omitted*).  To be clearly established, "prior precedent does not need to have indistinguishable facts." <u>Id</u>. (*citation omitted*).  In other words, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Guest</u> at 11 (W.D. Pa. July 17, 2020)(*quoting* <u>Hope v. Pelzer,</u> 536 U.S. 730, 741 (2002)).

Defendants acknowledge that the Hackneys have substantive and procedural due process rights to the care, custody and management of their daughter.  See ECF# 31 at 16-17.  However, Individual Defendants argue that they did not violate those rights and, even if they did, they could not have known it. See <u>Id</u>. at 12 (arguing violation not clearly established because, "[t]he Family Court record shows that the individual defendants followed the Child Protective Services Law and acted pursuant to Family Court orders.")

17

First, the Hackneys have plausibly alleged that Individual Defendants' actions violated their procedural and substantive due process rights. *See supra.*  Moreover, the Hackneys specifically allege that the Individual Defendants *did not* act pursuant to Family Court orders. *See e.g.* ECF # 26 at ¶¶ 110, 131, 148, 188-89.  Defendants do not identify what portions of the Child Protective Services Law permitted them to violate the constitutional rights of parents with intellectual disabilities.  However, even if the CPSL did permit this, it cannot immunize them from violations of the Hackneys' clearly established constitutional rights. *See supra re CPLS immunity.* As such, Individual Defendants are not entitled to qualified immunity.

> h. *Allegheny County is subject to municipal liability for violations of the Hackney's constitutional rights.*

The Hackneys assert municipal liability claims against Allegheny County based on its unconstitutional policy or custom and its failure to adequately train and/or discipline its employees.

> [A] § 1983 claim against a municipality may proceed in two ways. <u>Estate of Roman v. City of Newark</u>, 914 F.3d 789, 798–99 (3d Cir. 2019). A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, id. at 798 (*citing* <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), or that they were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice," see id. (internal quotation marks omitted) (quoting <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 215 (3d Cir. 2001)).

> <u>Forrest v. Parry</u>, 930 F.3d 93, 105 (3d Cir. 2019)

To plausibly plead a claim for an unconstitutional policy or custom a plaintiff must allege: "(1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom." <u>Hargrove v. City of Philadelphia</u>, 671 F. Supp. 3d 595, 605 (E.D. Pa. 2023)(citing <u>Wilson v. City</u>

of Phila., 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016); Monell v. Department of Social Service, 436 U.S. 658, (1978)).  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

The Hackneys have plausibly alleged violations of their Fourteenth Amendment substantive and procedural due process rights.  *See supra*.  The Hackneys have also plausibly alleged that these violations were caused by Allegheny County's custom of "routinely undermin[ing] the efforts of parents with intellectual disabilities to regain custody of their children, then move[ing] for termination of parental rights as soon as the 15-month Adoption and Safe Families Act reunification deadline ha[s] passed." ECF # 26 at ¶20.  They have alleged that Allegheny County, through its CYF caseworkers, engages in a course of conduct which is "permanent and well-settled."  The Hackneys have presented examples of tactics which Allegheny County caseworkers use to undermine intellectually disabled parents as well as the name of a long-time county employee who observed Allegheny County caseworkers engage in these tactics repeatedly over multiple years.  Id. at ¶ 21.  Finally, the Hackneys have plausibly alleged that this unconstitutional course of conduct caused the violation of their constitutional rights.  They have alleged that Allegheny County employees took specific actions in their case which are consistent with the County's custom, and which directly caused the deprivation of their constitutional rights.

The Hackneys have also alleged that the violations of their constitutional rights "were caused by a failure or inadequacy . . .  that 'reflects a deliberate or conscious choice'". Forrest at 105 (3d Cir. 2019) (*quoting* Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001)). *See also* Id. at 106. (Plaintiff must show that failure amounts to "deliberate indifference to the constitutional rights of those affected.")  The Hackneys allege that Allegheny County knew for

years that it lacked appropriate resources to address the needs of parents with intellectual disabilities. ECF # 26 at 16.  It created a team of professionals to evaluate and make recommendations for these parents. Id. at ¶¶ 16-19.  Then it ignored the recommendations and disbanded the team. Id. at ¶20.  Allegheny County has continued to oppose reunification and instead, to terminate the parental rights of individuals with intellectual disabilities, knowing that they have not received appropriate services. Id. at ¶22.  These allegations plausibly allege that Allegheny County was deliberately indifferent to the constitutional rights of intellectually disabled parents and that this deliberate indifference caused the violation of the Hackneys' rights.

Because the Hackneys have alleged sufficient facts to support claims under both "custom or policy" or "deliberate indifference" theories of municipal liability, their constitutional claims against Allegheny County should not be dismissed.

i.   *The Hackneys have plausibly pled claims against Allegheny County for violations of the ADA and Rehabilitation Act*

Section 504 of the Rehabilitation Act of 1973 (RA) and Title II of the Americans with Disabilities Act of 1990 (ADA) protect parents and prospective parents with disabilities from unlawful discrimination in the administration of child welfare programs, activities, and services.[9] *See* 28 C.F.R. § 35.130(b)(3); 45 C.F.R. § 84.60.

---

[9] See Protecting the Rights of Parents and Prospective Parents with Disabilities: Technical Assistance for State and Local Child Welfare Agencies and Courts under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act (U.S. Department of Health and Human Services and U.S. Department of Justice)(Aug. 7, 2015-  updated June 20, 2020) available at https://www.ada.gov/resources/protecting-parent-rights/.

Regulations implementing the RA elaborate on the requirements and prohibitions applicable to federally funded child welfare programs. 45 C.F.R. § 84.60.  The RA prohibits such programs from discriminating against parents with disabilities, including through:

> "(i) Decisions based on speculation, stereotypes, or generalizations that a parent, caregiver, foster parent, or prospective parent, because of a disability, cannot safely care for a child; and (ii) Decisions based on speculation, stereotypes, or generalizations about a child with a disability."

45 C.F.R. § 84.60(a)(2)

The regulations go on to specifically prohibit actions which:

> (1) Deny a qualified parent with a disability custody or control of, or visitation to, a child;
>
> (2) Deny a qualified parent with a disability an opportunity to participate in or benefit from any and all services provided by a child welfare agency, including but not limited to, family preservation and reunification services equal to that afforded to persons without disabilities;
>
> (3) Terminate the parental rights or legal guardianship of a qualified individual with a disability;
>
> . . .
>
> (5) Require children, on the basis on the disability, to be placed outside the family home through custody relinquishment, voluntary placement, or other forfeiture of parental rights in order to receive necessary services.

45 C.F.R. § 84.60(b)

The RA further requires federally funded child welfare programs:

> . . . establish procedures for referring to qualified professionals for evaluation those individuals, who, because of disability, need or are believed to need adapted services or reasonable modifications  A recipient shall also ensure that tests, assessments, and other evaluation tools and materials used for the purpose of assessing or evaluating parenting ability are based in evidence or research, are conducted by a qualified professional and are tailored to

> assess actual parenting ability and specific areas of
> disability-related needs. Parenting evaluations must be fully
> accessible to people with disabilities and shall not be based
> on a single general intelligence quotient or measure of the
> person's disability, rather than their parenting ability.
> Assessments of parents or children must be individualized
> and based on the best available objective evidence.

The Hackneys allege that Allegheny County has engaged in a scheme to terminate the rights of parents with intellectual disabilities for the purpose of permanently placing their children with non-disabled people. *See* ECF # 26 *passim* (*e.g.* ¶¶ 1, 6, 15-22, 263, 270). They have alleged that, in furtherance of this scheme, Defendants removed K.H. from their custody and tried to terminate their parental rights based on stereotypes about their disabilities and unfounded speculation about their ability to care for K.H. *See e.g.* id. at 52, 60-64, 110-11, 135, 193-94. They have alleged that Defendants conditioned their reunification with K.H. on participation in disability-related services without evaluating their need for those services and without providing those services. *See e.g.* id. at ¶¶ 105, 110, 111, 114, 133-134, 162, 175-6, 187, 204, 213.

Nevertheless, Defendants request dismissal of the Hackneys' ADA and RA claims solely because, according to Defendants, Achieva is "not an Allegheny County program, service or activity." Even if the only basis for the Hackneys' ADA and RA claims was Defendants' delay in providing Acheiva services (which, as stated above, it is not) these claims should not be dismissed. The Hackneys have alleged that providing services through Achieva is an Allegheny County "program, service or activity" because Allegheny County contracted with and paid Achieva to provide services to the Hackneys. ECF # 26 at ¶111. See 45 C.F.R. § 84.60(b); 28 C.F.R. § 35.130(b)(3) (RA and ADA prohibit discriminatory acts "through contracts, agreement or other arrangements.")

III)    CONCLUSION

Wherefore, for all of the foregoing reasons, Defendants Motion to Dismiss the Second

Amended Complaint should be denied.

Respectfully submitted,

/s/ Margaret S. Coleman
PA ID# 200975
maggie@ocwjustice.com

Alec B. Wright
PA ID #316657
alec@ocwjustice.com

O'BRIEN, COLEMAN & WRIGHT, LLC
116 Boulevard of the Allies
Pittsburgh, PA  15222
(412) 232-4400 – phone
(412) 232-4400 - fax

Attorneys for Plaintiff