IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW HACKNEY, et al., | Civil Action No. 2:24-cv-00472 |
| Plaintiffs, | Judge W. Scott Hardy |
| v. | Magistrate Judge Kezia O. L. Taylor |
| ALLEGHENY COUNTY, et al., | ECF No. 30 |
| Defendants. | |

**REPORT AND RECOMMENDATION**

I.   **RECOMMENDATION**

It is respectfully recommended that the Defendants' Motion to Dismiss be GRANTED IN PART AND DENIED IN PART: specifically, it is recommended that Defendants' motion be GRANTED, with prejudice: (1) with respect to all claims against CYF Defendants, those being Substantive Due Process, Procedural Due Process, and Conspiracy, and (2) with respect to the claims of Conspiracy and Failure to Train, Supervise against Allegheny County. It is recommended that Defendants' motion be DENIED as to the statute of limitations bar, and the *Younger* and *Rooker-Feldman* Doctrines; and it is further recommended that Defendants' motion be DENIED with respect to the claims against Allegheny County of Unconstitutional Custom, Policy, or Practice, the ADA, and the Rehabilitation Act.

II.   **REPORT**

A.   **Procedural Background**

Plaintiffs Andrew Hackney and Lauren Hackney and their minor daughter K.H. ("Plaintiffs"), are residents of Allegheny County, Pennsylvania. ECF No. 26 ¶¶ 7, 8. On March

1, 2024, Andrew Hackney and Lauren Hackney ("the Hackneys"), filed a civil rights complaint in the Allegheny Court of Common Pleas, alleging Defendant Allegheny County violated their Fourteenth Amendment Rights through an unlawful scheme to terminate their parental rights as intellectually disabled parents, so a non-disabled couple could adopt their child.  ECF No. 1 ¶¶ 1-4; ECF 1-2, ¶ 1.  Plaintiffs also alleged a civil rights conspiracy claim against four employees of Allegheny County Office of Children, Youth, and Family Services, ECF No 1-2 ¶¶ 191-193, and violations of the Americans with Disabilities Act (ADA).  *Id*., ¶¶ 194-204.  On March 28, 2028, Defendant Allegheny County removed the case to the Western District of Pennsylvania.  EFC No. 1.  On June 5, 2024, the Hackneys filed an amended civil rights complaint, adding to Plaintiffs their minor daughter K.H, and an additional defendant.  ECF No. 12.  On September 13, 2024, Plaintiffs filed a second amended complaint, ECF No. 26.  Defendants filed a Motion to Dismiss arguing that Plaintiffs' action is time barred by the statute of limitations, the *Younger* abstention and *Rooker-Feldman* Doctrines apply, Plaintiffs have not sufficiently pled ADA or Rehabilitation Act claims, and individual immunity applies to CYF employees.  ECF No. 31 at 4-9, 20.  Briefs in Opposition, Reply, and Sur-Reply Briefs have since been filed and the matter is now ripe for review.  ECF Nos. 36, 39, and 42.

   **B.**  **Factual Background**

  Plaintiffs Andrew and Lauren Hackney have intellectual disabilities.  ECF No. 26, at ¶ 25.  Their infant daughter, K.H., was born on February 9, 2021, and in October 2021, they sought medical treatment for her.  *Id*. ¶¶ 29-31.  The Allegheny County Office of Children Youth and Families ("CYF") and its named Defendant employees (collectively "CYF Defendants") assumed, based on the Hackneys' intellectual disabilities, that they could not care for her.  *Id*. at 28, 36, 52, 64, 107, 110, 129, 143, 174, 259, 263.  CYF took K.H. from the Hackneys and placed her in foster

care with a non-disabled couple. *Id*. ¶¶ 2, 74, 270. For more than three years, the Hackneys followed CYF's demands proving that they could care for K.H. *Id*., *passim*, *see e.g.* ¶¶ 82, 84, 87, 97, 100-104, 111, 116-117, 136, 146, 165, 201, 231. The Hackneys complied with court orders, drove to weekly supervised visits, worked with parenting and disability support specialists, took psychological evaluations and intelligence tests, attended and testified at hearings, and spent significant money on attorneys. *Id., passim*, *e.g.* ¶¶ 3, 115, 165, 206-208, 214, 220, 229, 232. Even so, CYF prevented them from reuniting with their daughter; *id*. *passim*, *see e.g.* ¶¶ 85, 86, 90, 108, 110, 116, 117, 130, 138, 149, 177-178, 183, 184, 186-87, 193, 198, 199, 223-224, 231, 240; falsified or misrepresented evidence to show that the Hackneys' disabilities prevent them from caring for K.H., and suppressed evidence that the Hackneys could care for K.H. unaided, *see, e.g.*, *id*. ¶¶ 66-72, 94-96, 110, 112, 123-127, 132-133, 138-140, 143, 150-151, 156, 167, 170, 193, 200, 238, 249, 251; required the Hackneys to take part in disability-related services and prevented them from receiving those services, *see, e.g.*, *id*. ¶¶ 105, 110, 111, 114, 133-134, 162, 175-6, 187, 204, 213; ignored court orders and opposed efforts toward reunification, see, *e.g.*, *id.* ¶¶ 110, 131, 148, 166, 174, 177-178, 188-189, 193, 223, 231, 240; imposed onerous requirements beyond usual parental expectations or a court order; *see, e.g.*, *id*. ¶¶ 4, 97-104, 116-119, 165, 168, 201-221, 221, 229, 236, 257; told the Hackneys that K.H. would be put up for adoption if they did not comply, *see, e.g.*, *id.* ¶¶ 99, 117, 201; and, reported the Hackneys as "non-compliant" if they fall short of its unreasonable demands. *Id.* ¶¶ 209, 210, 212, 220, 221. When they met those demands, CYF demanded more. *Id*. ¶¶ 5, 213, 216-221, 256. CYF's expectations and requirements have overwhelmed the Hackneys' limited resources and pushed them into financial ruin. *Id*. ¶¶232-237. In response to the Hackneys' distress, CYF has attempted to transfer permanent legal custody of K.H. to her non-disabled foster parents, who no longer want her. *Id*. ¶¶ 252-253. As a result,

the Hackney family has been decimated and three-year-old K.H. has no permanent home. *Id.* ¶¶ 254-255.

Defendants acted as part of a longstanding policy to remove children from intellectually disabled parents and place them with non-disabled people. *Id.* ¶¶ 15-22. Allegheny County has persisted in this despite knowing that the policy violates the intellectually disabled parents' constitutional and statutory rights. *Id.* ¶22.

### C. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering a motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to

relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the court must view the factual allegations contained in the pleading at issue as true, the court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Expounding on the *Twombly* and *Iqbal* line of cases, the Third Circuit has articulated this three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that

5

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

    **D.**    **Discussion**

    **1. Statute of Limitations, *Younger* Abstention, *Rooker-Feldman* Doctrine**

The statute of limitations for this action is two years. 42 Pa. C.S.A. ¶ 5524. CYF Defendants claim, therefore, that K.H.'s claims should be time-barred as she was added to this action in 2024. We disagree. Under Pennsylvania law, the statute of limitations does not start to run against a minor until he or she reaches age of eighteen. 42 Pa.C.S.A. § 5533(b), *see, e.g.*, *Jeffery Y. v. St. Marys Area Sch. Dist.,* 967 F. Supp. 852 (W.D. Pa. 1997). Accordingly, the allegations are not time-barred with respect to K.H. For the first time in their reply brief, CYF Defendants also ask the Court to dismiss claims brought by the Hackneys as time-barred because K.H. was removed from the Hackney's custody in November 2021 and the complaint filed in state court on March 1, 2024. ECF No. 39 at 2. We decline to dismiss these claims as time barred as a writ of summons was filed, as permitted in Pennsylvania, on November 16, 2023. S*ee* Pa. C. R. P. 1007.

Similarly, we do not accept CYF Defendants' invitation that we decline jurisdiction over the presented claims based on the *Younger* abstention doctrine. ECF No. 31 at 5. *See Younger v. Harris*, 401 U.S. 37 (1971). The Third Circuit has held that

> Younger abstention is only appropriate where the precise claims raised in federal court are available in the ongoing state proceedings. Where the availability of a claim in state court is questionable, our abstention jurisprudence weighs in favor of retaining jurisdiction. Cf. *Ankenbrandt [v. Richards*, 504 U.S. 689, 705 (1992)]* ("abstention rarely should be invoked").

*Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 413 (3d Cir. 2005). We agree with Plaintiffs that the claims here and those in state court are distinctive and serve different purposes. Finally, Plaintiffs in this proceeding are not asserting parental rights but are seeking money damages for violations of federal civil rights, *see* ECF No. 26 at 47, and those damages are unavailable through the state court proceeding. *See, e.g.*, *Peterson v. Allegheny Cnty.,* No. 2:21-CV-00078-CCW, 2022 WL 280948, at *11–12 (W.D. Pa. Jan. 31, 2022) (*Younger* abstention inapplicable because plaintiffs could not seek compensatory or punitive damages in Family Court custody proceedings). *Younger* abstention therefore does not apply here.

Likewise, we do not accept CYF Defendants' assertion that we must now decline jurisdiction based on the *Rooker-Feldman* doctrine, which "stands for the proposition that 'federal courts lack jurisdiction over suits that are essentially appeals from state-court judgments.'" *Guest v. Allegheny Cnty.*, 2020 WL 4041550, at *4 (W.D. Pa. July 17, 2020) (quoting *Great W. Mining & Min. Co. v. Fox Rothschild*, 615 F.3d 159, 166 (3d Cir. 2010)). *See also Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983) and *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923). The Third Circuit has held that

> [w]hen the plaintiff attempts to litigate previously litigated matters, the federal court has jurisdiction as long as the federal plaintiff presents some independent claim, even if that claim denies a legal conclusion reached by the state court." *In re Philadelphia Ent. & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018) (quoting *Great W. Mining*, 615 F.3d at 169) . . . "In other words, if the federal court's review does not concern 'the bona fides of the prior judgment,' the federal court 'is not conducting [prohibited] appellate review'" even if "the claim for relief if granted would as a practical matter undermine a valid state court order." *Id.* at 500, 503 (quoting *Great W. Mining*, 615 F.3d at 169).

*Vuyanich v. Smithton Borough*, 5 F.4th 379, 387 (3d Cir. 2021). The Hackneys, having challenged CYF Defendants actions as unconstitutional, have arguably presented the requisite "independent claim." The Family Court here adjudicated that K.H. was "dependent," meaning "without proper parental care or control." 42 Pa. C.S. ¶ 6302(1). As relief, the Hackneys are asking for money damages, not the return of K.H. to their care. We are inclined to agree with Plaintiffs that "a finding that Defendants' actions violated [the Hackneys] constitutional rights would not require a finding that the Family Court's decisions were erroneous." ECF No. 36 at 8. *See Vuyanich at* 386. ("When ... a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker–Feldman* is not a bar to federal jurisdiction." (citations omitted)). Defendants could have violated Plaintiffs' constitutional rights, and nevertheless, the Family Court's decision might have been correct. The Third Circuit has explicitly recognized that the *Rooker-Feldman* doctrine does not bar a plaintiff's federal action arising from injuries suffered not from a state-court judgment, but from the defendant's wrongful conduct in a state-court proceeding. *Great W. Mining & Min. Co. v. Fox Rothschild*, 615 F.3d 159, 167-68, 171-72 (3d Cir. 2010). *See also Vuyanich* at 386 (3d Cir. 2021) ("When ... a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction." (quoting *Great W. Mining*, 615 F.3d at 167)). In sum, we recommend that Defendants' motion be denied with respect to the assertions that we should decline to hear the case based on the statute of limitations with respect to Plaintiffs, the *Younger* abstention, or the *Rooker-Feldman* Doctrines.

### 2. CYF Defendants, Absolute Immunity, Procedural Due Process (Count II)

CYF Defendants assert the following:

> Plaintiffs' claims against the individual County Defendants are premised on alleged actions taken by them that fall within one or

8

> more of the above grants of absolute immunity: (1) in a prosecutorial capacity in preparation for or during judicial proceedings; (2) while testifying during a Court proceeding; (3) pursuant to a valid Court Order. (See ECF #26, generally, Second Amended Complaint.) Plaintiffs' 14th Amendment Procedural Due Process claim against the individual Defendants is solely based on allegedly presenting "false negative information about the Hackneys' parenting abilities at court hearings." (2nd Am. Compl. ¶26.) All of the individual Allegheny County Defendants are entitled to absolute immunity on all claims.

ECF No. 31 at 10. Even so, CYF Defendants bear the burden to show "that absolute immunity should attach 'to each act he allegedly committed that gave rise to a cause of action.'" *Guest v. Allegheny Cnty.*, No. CV 20-130, 2020 WL 4041550, at *9 (W.D. Pa. July 17, 2020) (quoting *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020)). This requires that CYF Defendants comb through the allegations to identify each action complained of and to show that those actions were "intimately associated with the judicial phase." *Id.* CYF Defendants have so far singled out *only* Plaintiffs' 14th Amendment Procedural Due Process claim, which they claim is based solely on testimony at court hearings, as warranting immunity.[1] ECF 31 at 10. We agree.

Child welfare employees are entitled to absolute immunity for actions "intimately associated with the judicial phase" of the Family Court process, *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 497 (3d Cir. 1997). To the extent that claims are against the CYF Defendants as witnesses, they are absolutely immune from suit. *Pelino v. Hens-Greco*, No. CV 16-1140, 2017 WL 321494, at *4 (W.D. Pa. Jan. 23, 2017), *aff'd*, 693 F. App'x 104 (3d Cir. 2017).

---

[1] We agree, generally, that Defendants would be immune from actions taken under (1) a court order, *Rivera v. Algarin,*, 350 F. App'x 703, 709 (3d Cir. 2009) ("action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages"), quoting *Hamilton v. Leavy,* 322 F.3d 776, 782–83 (3d Cir. 2003), and (2) the applicable sections of the Pennsylvania Child Protective Services Law, *Jones v. Snyder*, 714 A.2d 453, 456 (Pa. Super. Ct. 1998) (23 Pa.C.S.A. § 6318(a) providing immunity from liability for persons who have made a good faith report of suspected child abuse.)

9

Even if, as Plaintiffs assert, CYF Defendants lied and suppressed evidence, the claims against them would still be subject to dismissal, because Plaintiff's claims are based on their testimony at the hearing. *Id*., *Muhammad v. Dempsey*, 531 F. App'x. 216, 219 (3d Cir. 2013) (citing *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983)) (holding that child welfare worker was entitled to absolute immunity for allegedly perjured testimony at a custody hearing). Count II, Plaintiff's procedural due process claim under the 14th Amendment, is based on information presented at court hearings for which CYF Defendants have absolute immunity.[2]

On the basis of absolute immunity, we recommend that Plaintiff's claim for procedural due process be dismissed, and Defendants' motion to dismiss be granted as to procedural due process, with prejudice, as amendment would be futile.[3] Accordingly, we need not address CYF Defendants immunity under the Child Protective Services Law.

### 3. CFY Defendants, Substantive Due Process (Count I)

Parents have a "fundamental liberty interest . . . in the care, custody, and management of their child" protected by the Fourteenth Amendment. *Miller v. City of Philadelphia*, 174 F.3d 368, 374 (3d Cir. 1999) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, (1982)); *see also Anspach v. City of Philadelphia*, 503 F.3d 256, 261 (3d Cir. 2007), *Stosic v. W. Jefferson Hills Sch. Dist.,* No. 21-CV-1072, 2022 WL 2733817, at *11 (W.D. Pa. July 11, 2022). "The touchstone of due process

---

[2] Absolute immunity, however, does not extend to " 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." *Ernst* at 497 n.7. *Id*. at 497 n.7. While the facts may well establish *qualified immunity* for CYF Defendants, in light of our discussion below of Substantive Due Process and recommendation that this claim be dismissed for failure to state a cause of action, we need not address qualified immunity further.

[3] We note also that even the case Plaintiffs' cite, *Dennis v. DeJong*, 867 F. Supp. 2d 588, 632 (E.D. Pa. 2011), supports granting absolute immunity despite claims that caseworkers made false allegations. *Id*.

is the protection of the individual against arbitrary action of government." *Miller*, 174 F.3d at 374 (internal quotations omitted). To incur liability, the objective character of the government action must be so egregious that it "shocks the conscience." *Miller*, 174 F.3d at 375. Child welfare workers abridge an individual's substantive due process rights where their actions "exceed both negligence and deliberate indifference and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller*, 174 F.3d at 375–376. The Third Circuit, in explaining *Miller*, held that for a child welfare worker to be liable for removing a child from his parents upon suspicions of abuse,[4] the worker must have "consciously disregarded a great risk that there had been no abuse." *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 66 (3d Cir. 2002).

Plaintiffs assert that their right to substantive due process was violated by CYF Defendants "by interfering with the integrity of their family" in violation of the Fourteenth Amendment. ECF No. 26 ¶ 264. They recite in Count I that the action was taken with deliberate indifference and that it "shocks the conscience." The count itself does not recite that there was a conscious disregard for the great risk that there has been no abuse, alleging rather that Defendants schemed "to permanently deprive the Hackneys of custody. . . because of their intellectual disabilities." *Id.* ¶ 263. While we are obligated to view the Second Amended Complaint's factual allegations as true on a motion to dismiss, "we must then then determine whether they plausibly give rise to an entitlement for relief." *Burtch* at 221. The Third Circuit has stated that:

> In *Miller v. City of Philadelphia,* 174 F.3d 368 (3d Cir.1999), we held that a substantive due process claim requires "decision-making by a social worker that is so clearly arbitrary ... [that it] can properly be said to 'shock the conscience.'" *Id.* at 376; *see also Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1124–26 (3d Cir.1997). In so holding, we observed that "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case," because a

---

[4] "Abuse" here incorporates incapacity to care for K.H.

> "higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider their risks." *Miller*, 174 F.3d at 375. In such situations, the "standard of culpability" necessary for a child welfare employee's actions to shock the conscience must generally "exceed both negligence and deliberate indifference." *Id.*

*B.S. v. Somerset Cnty.*, 704 F.3d 250, 267–68 (3d Cir. 2013).

While familial integrity is a liberty interest entitled to constitutional protection, such protection is not absolute. *See Croft*, 103 F.3d at 1125. Rather, it is "limited by the compelling governmental interest in the protection of children – particularly where the children need to be protected from their own parents" and does not include a right to remain free from child abuse investigations. *Id.* In determining whether such constitutionally protected interests were violated, the Court "must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse." *Id.* at 1125. The State "has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* at 1126. Absent "information available to the defendants at the time [that] would have created an objectively reasonable suspicion of abuse justifying the degree of interference[,]" such governmental intrusion would be an unconstitutional "arbitrary abuse[ ] of power." *Id.*

The question requiring our attention is "whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [parent's rights]." *Croft*, 103 F.3d at 1125–26. Plaintiffs' Complaint recites that on October 25, 2021, the pediatrician found that K.H. was dehydrated, after which K.H. was admitted to Children's Hospital for treatment and required two weeks of inpatient treatment, after which, on November 8, 2021, K.H. was transferred to the Children's Home of Pittsburgh. ECF No. 26 ¶¶ 30 – 34. The staff at the Children's Home expressed concern that the Hackneys,

with their intellectual disabilities, might not understand how often K.H. requires feeding. *Id.* ¶¶ 36, 37. Defendant Vesilecky noted that it appeared that no adult caretaker in the home understood that the child was not being fed properly and that the problems were attributable to malnourishment. *Id.* ¶ 53. These concerns, among others, led to CYF's application for emergency custody being granted, *Id*. ¶ 55, and on November 18, 2021, after ten days of K.H. being cared for at the Children's Home, Vesilecky told the family "that K.H. had nearly died from dehydration because they did not feed her enough and no one in the household recognized that she was sick. [Vesilecky] told them that K.H. was unsafe in their home and that CYF was going to place her in foster care immediately." *Id.* ¶ 56. This information would have created the required objectively reasonable suspicion to justify the actions CYF Defendants took. Not only, then, do these actions not "shock the conscience," but also the Third Circuit has held that parental liberty interest in maintaining integrity of family unit is not a clearly established right where there is a "reasonable suspicion" that abuse may have occurred. *Croft*, 103 F.3d at 1126. Thus, we recommend that Plaintiff's claim for substantive due process be dismissed, with prejudice, as amendment would be futile.[5]

### 4. CYF Defendants and Allegheny County, Conspiracy (Count IV)

Plaintiffs' allegations of conspiracy to violate their constitutional rights fail. Having recommended that the two claims brought against the CYF Defendants be dismissed, there will remain only one Defendant, Allegheny County, and one cannot conspire with oneself. *Difronzo v. Chiovero*, 2009 WL 10677787, at *1 (E.D. Pa. 2009), *aff'd*, 406 F. App'x 605 (3d Cir. 2011) ("The *sine qua non* of a conspiracy is an agreement to act in concert."), *see also Mansaray v.*

---

[5] Having recommended dismissal of Count I (Substantive Due Process) and Count II (Procedural Due Process), the only counts directed at CYF Defendants, we need not address Defendants' assertions that Plaintiffs have not alleged CYF Defendants' personal involvement.

13

*Wenner*, No. 1:21-CV-351, 2022 WL 463302, at *2 (W.D. Pa. Feb. 15, 2022). Thus, as to conspiracy, Plaintiffs have failed to state a claim upon which relief can be granted and we recommend that the conspiracy claim be dismissed, with prejudice as amendment would be futile.

### 5. Allegheny County, Monell Claims (Count III and Count IV)

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. § 1983. Local governments are considered persons under Section 1983 and may be sued directly under that section when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Servs. of City of NY*, 436 U.S. 658, 690 (1978). "[A] government entity may not be held vicariously liable under § 1983 for the acts of its employees under a *respondeat superior* theory of liability." *Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449, 459 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 691). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." (quotation marks omitted)). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of

14

the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

To succeed on constitutional claims under *Monell*, a plaintiff must: "(1) identify a policy, practice, or custom, (2) attribute it to the city, and (3) show a causal link between execution of the policy and the injury suffered." *Win & Son*, 162 F. Supp. 3d. at 459 (quoting *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)) ("A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered."). Plaintiffs (1) identify "a policy and practice of separating children from their intellectually disabled parents for the purpose of placing them in the care of non-disabled individuals," ECF No. 26 ¶ 270 and "a custom, policy and/or practice," *id.* ¶ 271; (2) attribute it to Allegheny County, *id.*, and (3) and show a causal link by asserting that "this unconstitutional policy and practice proximately caused the violation of Plaintiffs' constitutional rights." *Id.* In their brief in response to this motion to dismiss, ECF No. 36 at 21, Plaintiffs assert that:

> these violations were caused by Allegheny County's custom of "routinely undermin[ing] the efforts of parents with intellectual disabilities to regain custody of their children, then mov[ing] for termination of parental rights as soon as the 15-month Adoption and Safe Families Act reunification deadline ha[s] passed." ECF # 26 at ¶20. They have alleged that Allegheny County, through its CYF caseworkers, engages in a course of conduct which is "permanent and well-settled." The Hackneys have presented examples of tactics which Allegheny County caseworkers use to undermine intellectually disabled parents as well as the name of a longtime county employee who observed Allegheny County caseworkers engage in these tactics repeatedly over multiple years. *Id.* at ¶ 21.
> . . .
> Allegheny County knew for years that it lacked appropriate resources to address the needs of parents with intellectual disabilities. ECF # 26 at 16. It created a team of professionals to evaluate and make recommendations for these parents. *Id.* at ¶¶ 16-

15

>19. Then it ignored the recommendations and disbanded the team. *Id.* at ¶20. Allegheny County has continued to oppose reunification and instead, to terminate the parental rights of individuals with intellectual disabilities, knowing that they have not received appropriate services. *Id*. at ¶22.

These statements are neither a "bare recitation of the words custom and/or policy," *see Pittman v. Martin*, 569 F. App'x 89, 92 (3d Cir. 2014), nor are they "vague assertions." *See Tripodi v. N. Coventry Twp.*, 616 F. App'x 521, 523 (3d Cir. 2015) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)).  Particularly in light of our obligation on a motion to dismiss to take Plaintiffs' factual allegations as true, *Coon v. Cnty. of Lebanon*, 111 F.4th 273, 275 (3d Cir. 2024), we find that Plaintiffs have alleged a policy, practice, or custom that deprived them of their rights sufficient to survive a motion to dismiss.

Plaintiffs also assert municipal liability claims against Allegheny County for failing to "train, supervise and/or discipline individual Defendants who engaged in a scheme to violate the Hackneys Constitutional rights by permanently depriving them of the custody of their daughter, " ECF 26 ¶ 273, and failure to adopt necessary policies.  *Id*. ¶¶ 274, 275.  A plaintiff, however, cannot premise municipal liability for constitutional deprivations on a theory of *respondeat superior* or vicarious liability because "[a] 'person' is not the 'moving force behind the constitutional violation' of a subordinate, *unless that 'person' – whether a natural one or a municipality – has exhibited deliberate indifference to the plight of the person deprived*." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (emphasis supplied) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  Unlike liability based on a municipality's official policy or established custom, a plaintiff who pursues a § 1983 claim under *Monell* for the failure to train or supervise need not identify any policy or custom that is at issue, because it is the decision not to train or supervise that causes the constitutional deprivation.  *Estate of Roman*, 914 F.3d at 798.

16

Yet a plaintiff must plead that the municipality's decision not to train or supervise "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Johnson*, 975 F.3d at 403 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" *Canton*, 489 U.S. at 379. While the complaint's language points to a "failure" of Allegheny County to train, supervise, and discipline employees, and a "failure" to adopt policies, Plaintiffs do not assert deliberate indifference, or even anything close to it, as to these lapses. *See* ECF No. 26 ¶¶ 272 – 276. Although we must view the facts in the light most favorable to the Plaintiffs, *U.S. Express Lines*, 281 F.3d at 388, we are not required to accept inferences unsupported by the record. *California Pub. Emp. Ret. Sys.*, 394 F.3d *at* 143. The assertion that Allegheny County made a deliberate or conscious choice not to train or supervise lacks factual support. Further, to the extent Plaintiffs allege negligence by Allegheny County, that behavior does not violate the Constitution, and, in Pennsylvania municipalities are "generally ... immune from tort liability" except in certain situations that are inapplicable to these facts. *Brewington ex rel. Brewington v. City of Phila.*, 199 A.3d 348, 350 (Pa. 2018); *see also* 42 Pa. Const. Stat. §§ 8541, 8542 (Pennsylvania Political Subdivision Tort Claims Act). Consequently, the claim Plaintiffs assert against Allegheny County for failure to train, supervise, discipline, or adopt necessary policies should be dismissed with prejudice, as amendment would be futile; any claims purportedly based on negligence would be foreclosed.

### 6. ADA and Rehabilitation Act

Plaintiffs allege that Allegheny County violated Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. These claims may be analyzed

together as the "substantive standards for determining liability are the same" under both statutes. *See Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 - 89 (3d Cir. 2019). To state a claim under Section 504 of the Rehabilitation Act, plaintiffs must allege: (1) that they are disabled within the meaning of the Act; (2) that they are otherwise qualified for the services sought; (3) that they were excluded from the services sought solely by reason of their handicap; and (4) that the program or activity in question receives federal financial assistance. *Strathie v. Dep't of Transp.*, 716 F.2d 227, 230 (3d Cir. 1983); *Furgess*, 933 F.3d at 288 - 89. To state a claim under Title II of the ADA, plaintiffs must show that: (1) they are a qualified individual; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability. *Durham v. Kelley*, 82 F. 4th 217, 225 (3d Cir. 2023). The ADA does not require that the defendant receive federal financial assistance. *Yeskey v. Com. of Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir. 1997), *aff'd sub nom. Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). The Rehabilitation Act and the ADA have different causation standards; the Rehabilitation Act "allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program solely on the basis of disability, while the ADA covers discrimination on the basis of disability, even if there is another cause as well." *C.G. v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235–36 (3d Cir. 2013). Allegheny County neither contests that the Plaintiffs are qualified individual with disabilities nor that Allegheny County receives federal funds. Thus, the question is whether the Hackneys sufficiently alleged discrimination "solely by reason of [their] handicap" under the Rehabilitation Act, or "by reason of [their] disability" under the ADA.

Plaintiffs allege that Allegheny County discriminated against them under the Rehabilitation Act and the ADA when

> Allegheny County []engaged in a scheme to terminate the rights of parents with intellectual disabilities for the purpose of permanently placing their children with non-disabled people. See ECF # 26 passim (e.g. ¶¶ 1, 6, 15-22, 263, 270). [Plaintiffs] have alleged that, in furtherance of this scheme, Defendants removed K.H. from their custody and tried to terminate their parental rights based on stereotypes about their disabilities and unfounded speculation about their ability to care for K.H. See e.g. *id*. at 52, 60-64, 110-11, 135, 193-94. They have alleged that Defendants conditioned their reunification with K.H. on participation in disability-related services without evaluating their need for those services and without providing those services. See e.g. id. at ¶¶ 105, 110, 111, 114, 133-134, 162, 175-6, 187, 204, 213.

ECF 36 at 24.  Allegheny County argues that Plaintiffs' claims should be dismissed because Achieva, which it asserts is the only identified program in Plaintiffs' Complaint and to which services there was a delay, is not an Allegheny County program.  ECF 31 at 21.  Plaintiffs counter that Allegheny County contracted with and paid Achieva to provide services to the Hackneys, ECF No. 26 at ¶111, and that both the Rehabilitation Act and the ADA prohibit discriminatory acts "through contracts, agreement or other arrangements.")  *See* 45 C.F.R. § 84.60(b); 28 C.F.R. § 35.130(b)(3).  Plaintiffs also emphasize that the failure to provide Achieva services promptly is not the only basis for Plaintiffs' discrimination claims.  We agree with Plaintiffs.  Plaintiffs have alleged sufficient facts, at this stage, to raise an inference of discrimination under the ADA and the Rehabilitation Act.  Thus, it is recommended that Defendants' motion be denied with respect to the ADA and the Rehabilitation Act.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Defendants' Motion to Dismiss be GRANTED IN PART AND DENIED IN PART: specifically, it is recommended that Defendants' motion be GRANTED, with prejudice: (1) with respect to all claims against CYF Defendants, those being Substantive Due Process, Procedural Due Process, and Conspiracy, and

(2) with respect to the claims of Conspiracy and Failure to Train, Supervise against Allegheny County. It is recommended that Defendants' motion be DENIED as to the statute of limitations bar, and the *Younger* and *Rooker-Feldman* Doctrines; and it is further recommended that Defendants' motion be DENIED with respect to the claims against Allegheny County of Unconstitutional Custom, Policy, or Practice, the ADA, and the Rehabilitation Act.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: May 30, 2025

BY THE COURT

/s/ Kezia O. L. Taylor
KEZIA O. L. TAYLOR
United States Magistrate Judge

cc: Counsel of Record