IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW and LAUREN HACKNEY, individually and on behalf of their minor daughter, K.H., <br><br> Plaintiffs, <br><br> v. <br><br> ALLEGHENY COUNTY, JENNA REED, MICHELLE VESELICKY, MICHELE HANEY, EMMA EMBAR, and MONICA ANDERSON-RHONES, <br><br> Defendants. | No. 2:24-cv-00472-WSH <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION**

Plaintiffs, through their undersigned attorneys, hereby file the within Objections to the Magistrate Judge's Report and Recommendation (ECF 43) as follows:

I) Introduction

Plaintiffs, Andrew and Lauren Hackney ("the Hackneys") and their daughter ("K.H.") (collectively, the "Hackney Family") allege that Defendant Allegheny County has adopted a policy and practice of removing children from their intellectually disabled parents because it believes these children should be raised by non-disabled people. They allege that in furtherance of this policy and practice, CYF caseworkers and casework supervisors ("CYF Defendants") obtained custody of K.H. based on fabricated allegations of neglect and placed her with non-disabled foster parents. CYF Defendants then opposed reunification of the Hackney Family and attempted to terminate the Hackneys' parental rights by *inter alia,* violating court orders, presenting false and misleading testimony, suppressing information, withholding services, subjecting the Hackneys to excessive scrutiny and imposing arbitrary and inconsistent restrictions on their contact with K.H. *See* ECF # 26, *passim*.

1

The Magistrate Judge found that the Hackneys' Second Amended Complaint (SAC) stated claims against Allegheny County for adopting unconstitutional customs, policies and/or practices, and for violating the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). However, the Magistrate Judge found that the Hackneys did not sufficiently allege substantive due process claims against the individually named CYF Defendants. The Magistrate Judge also found that the Hackneys did not sufficiently support their claims against Allegheny County for failure to train, supervise or adopt necessary policies. To the contrary, the SAC plausibly asserts that the individually-named CYF Defendants engaged in investigative and/or administrative acts that violated the Hackneys' substantive due process right to family integrity. Moreover, the SAC plausibly alleges that Allegheny County ignored a serious need to train and supervise its employees in handling cases involving intellectually disabled parents, and did not adopt the policies necessary to ensure that it did not violate these parents' constitutional rights. As explained in further detail herein, this Court should adopt the Magistrate Judge's report and recommendation in part and reject it in part.

II)    Argument

a. Motion to dismiss standard

To survive a motion to dismiss, a federal complaint alleging constitutional violations need only "plead facts sufficient to show that [a] claim has substantive plausibility." Johnson v. City of Shelby, 574 U.S. 10, 12 (2014). *See also* Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 167-69 (1993) (constitutional claims not subject heightened pleading standard under Fed. R. Civ. Pro. 8); Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)(*same*). In determining whether this standard is met, a court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view

2

them in the light most favorable to the plaintiff." Lora-Pena v. F.B.I., 529 F.3d 503, 505 (3d Cir. 2008)" (*citing* Evancho, 423 F.3d at 350.)

A motion to dismiss should be denied where the complaint contains "enough factual matter (taken as true) to suggest" the required elements of the plaintiff's claims. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007)). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" sufficient to prove the case. Id. *See also* Id. ("if, in view of what is alleged, it can reasonably be conceived that the plaintiffs ... could, upon a trial, establish a case which would entitle them to ... relief, the motion to dismiss should not have been granted")(*quoting* Twombly at 1969 n.8)(*alterations in original*).

> b. The Magistrate Judge erred in dismissing the Hackneys' Fourteenth Amendment Substantive Due Process claim against the CYF Defendants

The Magistrate Judge correctly stated the legal standard applicable to substantive due process claims involving child abuse investigations, which is: "whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [parent's rights]." ECF # 43 at 12 (*quoting* Croft v. Westmoreland Cnty. Children & Youth Servs., 103 F.3d 1123, 1124–26 (3d Cir.1997). However, the Magistrate Judge misapplied this standard to the Hackneys' Complaint.

> 1. *The SAC plausibly alleges that the CYF Defendants violated the Hackneys' due process rights when they removed K.H. from their custody.*

First, the Magistrate Judge incorrectly concluded that the information available to the CYF Defendants justified their decision to remove K.H. from the Hackneys' custody. In doing so, the Judge failed to credit the Hackneys' well-pleaded allegations and draw reasonable inferences in their favor. Instead, the Judge only referenced information from the SAC which was consistent

3

with CYF Defendants' asserted justification, while ignoring allegations showing that this justification was false and pretextual.

For example, the Magistrate Judge concluded that CYF Defendants' initial decision to take custody of K.H. was justified by their alleged belief that "no adult caretaker in the home understood that the child was not being fed properly and that the problems were attributable to malnourishment." ECF # 43 at 13. To support this conclusion, the Magistrate Judge noted that K.H.'s pediatrician diagnosed her with dehydration. Id. at 12 (*citing* ECF # 26 at 29-30). However, the Magistrate Judge entirely ignored allegations in the same paragraph that the Hackneys brought K.H. to her pediatrician *because* they understood that she needed medical attention because she was not eating enough. ECF # 26 at ¶¶ 29-30. The Magistrate Judge also completely ignored allegations that the pediatrician's records, which were available to CYF Defendants, documented that the Hackneys had a history of appropriately feeding and caring for K.H. and that K.H. had a history of refusing to eat, for which the Hackneys had previously sought assistance.[1] ECF # 26 at ¶¶28 – 30, 47.

Similarly, to support dismissal of the Hackneys' claims against the CYF Defendants, the Magistrate Judge noted that "Children's Home staff had expressed concern that, because of their disabilities, the Hackneys might not understand how to feed K.H." ECF # 43 at 13 (*citing* ECF # 26 at ¶¶36-37). However, the Judge ignored the allegation that, by the time CYF Defendants sought custody of K.H., they knew that "the Hackneys had demonstrated to the satisfaction of Children's Home staff that they were able to feed and care for K.H. without assistance." ECF # 26 at 37, 46. When these allegations are credited, as they must be at this stage, they create a

---

[1] After the SAC was filed, K.H. was diagnosed with ASH1L gene, a condition linked to feeding difficulty in infants.

reasonable inference that CYF Defendants knew that the Hackneys were safe and capable parents, yet intentionally portrayed a false narrative for the purpose of removing K.H. from the Hackneys' care without justification.

The Magistrate Judge also applied the incorrect legal standard to conclude that the CYF Defendants' actions were not "conscious shocking." The Magistrate Judge stated, "Child welfare workers abridge an individual's substantive due process rights where their actions 'exceed both negligence and deliberate indifference and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" ECF # 43 at 11 (*quoting* Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999)). However, "The level of culpability required for behavior to shock the conscience largely depends on the context in which the action takes place." L.R. v. Sch. Dist. of Philadelphia, 836 F.3d 235, 246 (3d Cir. 2016) Therefore, "A plaintiff seeking to establish a constitutional violation must demonstrate that the official's conduct 'shocks the conscience' *in the particular setting in which that conduct occurred*." Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000)(*emphasis added*). "Deliberate indifference that shocks in one environment may not be so patently egregious in another...." Id. (*quoting* Cnty. of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)).

The Magistrate Judge's "gross negligence or arbitrariness" standard might be proper when a government official does not have the "luxury of proceeding in a deliberate fashion", as was the case in Miller. *See* Miller at 375. But this standard is inapplicable when the government official has ample time to deliberate, as is alleged in the SAC. For example, in Nicini, the Third Circuit applied a deliberate indifference standard to a foster care worker who had time "to make unhurried judgments" in his investigation. Nicini at 811. Similarly, in L.R. v. Sch. Dist. of Philadelphia, the Third Circuit applied a deliberate indifference standard to an elementary school teacher because,

5

"On the facts as pled, . . . there is nothing to indicate that [defendant] faced circumstances requiring him to make a quick decision." L.R. at 246

As in Nicini and L.R., the correct standard here is deliberate indifference because the CYF Defendants had ample time to deliberate and make unhurried judgments before acting to take custody of K.H.[2] Based on the allegations in the SAC, K.H. was in no immediate danger. She was under the care of medical professionals (because the Hackneys had recognized that she needed medical intervention and brought her to the hospital.) She was housed at the Children's Home, where she had been for over a week while the Hackneys cared for her under staff supervision. ECF # 26 at ¶¶34-5, 37. There was no reason to believe her discharge was imminent.[3] In short, CYF Defendants' decisions were not "instantaneous" or "pressured". Rather, they were made deliberately and pursuant to an established Allegheny County policy of removing children from their intellectually disabled parents. See ECF # 43 at 14-16.

Moreover, even if a heightened standard of culpability were appropriate in this case, the CYF Defendants' conduct meets it. The Hackneys allege that CYF Defendants concocted false allegations that they had seriously neglected their infant daughter and suppressed evidence that they had not.[4] They allege that CYF Defendants did this for the purpose of obtaining custody of

---

[2] "[The Third Circuit] has defined deliberate indifference as requiring a 'conscious disregard of a substantial risk of serious harm.' That is, 'deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known.'" L.R. at 246 (3d Cir. 2016).

[3] The only reason her discharge might have been imminent was Children's Home's determination that the Hackneys were able to care for her without assistance. Id. at ¶ 37. The allegations in the SAC support an inference that, if CYF Defendants were rushed, it was because they were in a hurry to seize K.H. and place her with a non-disabled foster family before the Childre's Home could discharge to the Hackneys, in conformity with CYF's policy of separating children from their intellectually disabled parents. See ECF # 43 at 14-16. This only buttresses the Hackneys' claims that CYF Defendants' actions were unjustified and violated due process.

[4] The Hackneys allege that CYF Defendants knowingly made the following false allegations about them: 1) they did not understand that K.H. was sick or that she was not eating enough (ECF # 26 at ¶53); 2) they waited a week to take K.H. to the doctor because Andrew did not want to take time off of work (Id. at ¶54); 3) they regularly left K.H. in the custody of Andrew's sister, who they knew forgot to feed her (Id. at ¶ 45); and 4) they only fed K.H. two to three times

K.H. and permanently placing her with a non-disabled couple, whom they assumed would be better parents because they did not have disabilities. *See e.g.* ECF # 26 at ¶¶1, 6, 57, 77, 79, 170, 183, 258-259.[5] Government agents fabricating evidence to take a child away from loving and competent parents and give her to people they think are "better" should shock the conscience of any reasonable American.[6]

    2. *CYF Defendants' ongoing interference with the Hackney Family violates their substantive due process rights.*

The Magistrate Judge also erred by not addressing the substantive due process implications of CYF's ongoing interference with the Hackney Family. As the Hackneys explained in their Brief in Opposition to Defendants' Motion to Dismiss, parents' fundamental liberty interest in family integrity "does not evaporate simply because they have . . . lost temporary custody of their child to the State." Rather, "parents retain a vital interest in preventing the irretrievable destruction of their family life." Santosky v. Kramer, 455 U.S. 745, 753 (1982). See ECF # 36 at 11. Therefore, the Magistrate Judge should have considered whether CYF Defendants' continuing interference with the Hackney family has been justified by an objectively reasonable suspicion that K.H. would be unsafe if returned to them. At the motions to dismiss phase, drawing all reasonable inferences

---

per day (Id.). The Hackneys also allege that CYF Defendants deliberately suppressed information which showed that they had not abused or neglected K.H. They allege that Defendant Reed interviewed Cynthia Hackney and thus knew that Cynthia was a primary caregiver who resided in the home, was not intellectually disabled, and provided substantial parenting assistance to Andrew and Lauren. Id. at ¶¶ 24-25, 42-43. Reed failed to document any of this information, or even the fact that she had interviewed Cynthia. Id. CYF Defendants also suppressed the fact that the Hackneys' home was clean and well-maintained with appropriate toys and supplies for K.H. (Id. at ¶66) and that the Hackneys cared appropriately for K.H. during a supervised visit shortly after she was placed in temporary foster care (Id. at ¶ 68).

[5] The Magistrate Judge acknowledged that absolute immunity does not extend to "'investigative or administrative' actions taken by child welfare workers outside of the context of a judicial proceeding" *See* ECF # 43 at 10 n.2.(*citing* Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 497 n.7 (3d Cir. 1997)). However, the Judge did not consider whether the CYF Defendants alleged investigative and administrative misconduct violated the Hackneys' substantive due process rights.

[6] See Deboer v. Schmidt, 1993 WL 275828 (July 26, 1993). ("Courts are not free to take children from parents simply by deciding another home offers more advantages.")*(cleaned up)(citation omitted)*.

7

in the Hackneys' favor and taking their allegations as true, the Magistrate Judge should have found that the CYF Defendants' continuing interference was (and is) objectively unreasonable.

The Hackneys allege that they have complied with CYF Defendants' ever-increasing demands and have repeatedly proven that they are able to care for K.H. *See e.g.* ECF # 26, *passim* (*especially* ¶3-5, 37, 123, 138, 153, 158-59, 168, 228, 243, 247.) They allege that despite the lack of any objective basis to believe that K.H. would be unsafe in their care, CYF Defendants have engaged in a coordinated scheme to prevent their reunification and terminate their parental rights. *See* ECF # 26 *passim*. The Hackneys have set forth specific allegations describing the actions of each CYF defendant in furtherance of this unlawful objective. *See* ECF # 36 at 11-12. These actions violated (and continue to violate) the Hackney Family's substantive due process right to family integrity. Moreover, these actions are conscience-shocking under the standard discussed above. Therefore, the Magistrate Judge erred by dismissing the Hackneys' substantive due process claims against the CYF Defendants without considering these ongoing constitutional violations.

    c. The Magistrate Judge improperly dismissed the Hackneys' claims against Allegheny County based on its failure to train, supervise or adopt necessary policies.

"[A] § 1983 claim against a municipality may proceed in two ways." Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (*quoting* Estate of Roman v. City of Newark, 914 F.3d 789, 798-99 (3d Cir. 1999)). "A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice[.]'" Id. (*citing* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) and Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001)) (*internal citations omitted*). The Magistrate Judge found that the Hackneys' SAC sufficiently alleged municipal liability claims under the first of these theories, but not the second. In other words,

according to the Judge, the Hackneys adequately alleged that the County adopted a policy or practice that violated their constitutional rights, but not that the County failed to adopt a policy necessary to ensure that their rights were not violated. Because the Hackneys properly alleged claims under both theories (separately or alternatively), the motion to dismiss should have been denied as to all claims against Allegheny County.

Liability stemming from a municipality's failure or inadequacy may arise in the context of a failure to train/supervise, or a failure to adopt an obviously necessary policy. A failure to supervise amounts to deliberate indifference when, "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). A failure to adopt a necessary policy amounts to deliberate indifference when "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 407 (1997) (*citation omitted*) (*emphasis added*)).

The Magistrate Judge acknowledged that the SAC "points to a 'failure' of Allegheny County to train, supervise, and discipline employees, and a 'failure' to adopt policies . . ." ECF # 43, at 17. However, the Judge dismissed these claims because, "Plaintiffs do not assert deliberate indifference, or even anything close to it, as to these lapses" and "[t]he assertion that Allegheny County made a deliberate or conscious choice not to train or supervise lacks factual support." Id.

9

This is simply not true. The "Factual Background" section of the SAC begins with the Family Court's request that Allegheny County develop a program to correct its failure to provide services to intellectually disabled parents. *See e.g.,* SAC 15-22. In response, the County's Office of Intellectual Disabilities created a Parent Assessment Team (PAT) to evaluate and make recommendations for these parents. Id. at ¶¶ 17-19. These allegations alone demonstrate that Allegheny County recognized an obvious need for policies on appropriately handling cases involving intellectually disabled parents. *See id.* at ¶ 22 ("Sometime after July 2019, Allegheny County disbanded the PAT despite knowing that the team was necessary for CYF to evaluate and meet the needs of intellectually disabled parents. Allegheny County knew that disbanding the PAT was likely to result in the violation of these parents' federal rights and/or exacerbation of ongoing violations of their rights.").

Moreover, the SAC alleges that CYF caseworkers ignored the PAT's recommendations and instead engaged in tactics calculated to prevent reunification and facilitate terminating these parents' rights to their children. Id. at ¶¶21-21. Rather than address its employees' unconstitutional behavior through training, discipline or supervision, the County chose to disband the taskforce and return to the *status quo* of routinely violating the rights of intellectually disabled parents. Id. at ¶ 22. The results of this choice are detailed in the remainder of the SAC, which describes ongoing constitutional violations by CYF caseworkers and their supervisors which have gone entirely unaddressed by Allegheny County.

Based on these allegations, Allegheny County knew that it needed to adopt and implement policies to protect the rights of intellectually disabled parents. It also knew that it needed to train and supervise its personnel to ensure that they did not violate the constitutional rights of intellectually disabled parents with whom they came in contact. The County deliberately chose

not to do either. This is sufficient at this early stage to state a plausible claim that the County failed to train/supervise, or adopt necessary policies.

Just as a jail has a duty to adopt policies necessary to ensure that its medical programs provide adequate care to prisoners, *see* Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003), Allegheny County has a duty to adopt policies necessary to ensure that its child welfare programs do not unconstitutionally interfere with the rights of disabled parents - particularly when the County knows that without such policies, these constitutional violations will occur. The Hackneys' allegations are more than sufficient to plead a Monell claim for failure to train, supervise or adopt necessary policies under Rule 8's notice pleading standard. The Magistrate Judge should not have dismissed them.

    d.  The Magistrate Judge erred in dismissing the Hackneys' civil conspiracy claim.

The Magistrate Judge dismissed the Hackney's 42 U.S.C § 1985 conspiracy claims solely because Allegheny County is the only remaining party. ECF # 43 at 13. For the reasons stated above, the Magistrate Judge should not have dismissed the Hackneys' claims against the individually named defendants. If the Court rejects that portion of the Report and Recommendation, Allegheny County will not be the only defendant. Moreover, even if this Court adopts the recommendation to dismiss the CYF Defendants, the SAC plausibly alleges that Allegheny County conspired with Adoption Connection, Accessibility and the Foster Family to deprive the Hackneys of their constitutional right to family integrity. *See e.g.* ECF # 26 at ¶¶ 74-80, 79, 85, 87, 94-96, 105, 127, 133, 149, 152, 155-56, 183, 196, 212, 218, 226, 252. When parties conspire to violate federal rights, 42 U.S.C. § 1985 specifically provides a cause of action against "*any one* or more of the conspirators." (*emphasis added*). Therefore, the Hackneys were not required to name any additional conspirators in their SAC for their conspiracy claims against

Allegheny County to survive. The conspiracy claims against Allegheny County should not have been dismissed.

III)   Conclusion

Wherefore, for all the forgoing reasons, as well as those set forth in Plaintiff's prior submissions, this Honorable Court should adopt the Magistrate's Report and Recommendation in part and deny it in part as set forth above.

    Respectfully submitted,

    O'BRIEN, COLEMAN & WRIGHT, LLC

    */s/ Margaret S. Coleman*
    Margaret S. Coleman
    Pa. ID No. 200975

    Alec B. Wright
    PA ID No. 316657

    116 Boulevard of the Allies
    Pittsburgh, PA  15222
    (412) 232-4400
    *(Counsel for Plaintiffs)*