IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW HACKNEY and LAUREN HACKNEY, individually and on behalf of their minor daughter, K.H., | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 24-472 |
| | ) | |
| v. | ) | |
| | ) | |
| ALLEGHENY COUNTY, JENNA REED, MICHELLE VESELICKY, MICHELE HANEY, EMMA ENBAR, and MONICA ANDERSON-RHONES, | ) ) ) ) | District Judge W. Scott Hardy Magistrate Judge Kezia O. L. Taylor |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER OF COURT

Presently before the Court are the parties' Objections to the Report and Recommendation ("R&R") (Docket No. 43) entered by Magistrate Judge Kezia O. L. Taylor in this matter on May 30, 2025.  For the reasons that follow, Plaintiffs' Objections to the R&R (Docket No. 46) will be sustained, Defendants' Objections to the R&R (Docket No. 49) will be overruled, and the R&R (Docket No. 43) will be adopted, as modified herein, as the Opinion of the Court.  Accordingly, as set forth herein, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion to Dismiss") (Docket No. 30) will be granted in part and denied in part.

### I.    BACKGROUND

The R&R recommends that Defendants' Motion to Dismiss be granted in part and denied in part.  (Docket No. 43 at 1, 19-20).  Service of the R&R was made on the parties through the Court's CM/ECF system, and the parties were advised that any objections to same were due by June 13, 2025.  (Docket No. 43 at 20 and Docket text entry).  Upon joint motion of the parties requesting an extension (Docket No. 44), the Court ordered that Objections were due by July 3,

1

2025 (Docket No. 45).  On July 3, 2025, Plaintiffs, Andrew Hackney and Lauren Hackney,[1]

individually and on behalf of their daughter K.H. (collectively, "Plaintiffs" or the "Hackneys"),

filed their Objections (Docket No. 46).  That same day, Defendants Allegheny County (the

"County") and employees of the Allegheny County Office of Children Youth and Families

(collectively, the "CYF Defendants")[2] filed an unopposed motion for an extension to file

Objections (Docket No. 47), which the Court granted (Docket No. 48).  On July 10, 2025,

Defendants filed their Objections (Docket No. 49).

The R&R recommends that Defendants' Motion to Dismiss Plaintiffs' Second Amended

Complaint ("SAC") be granted in part, with prejudice, with respect to all claims against the CYF

Defendants – substantive due process (Count I), procedural due process (Count II), and conspiracy

(Count V) – and with respect to the claims against the County of conspiracy (Count V) and failure

to train, supervise, discipline or adopt necessary policies under *Monell v. Department of Social

Services*, 436 U.S. 658 (1978), (Count IV).  (Docket No. 43 at 1, 19-20).  The R&R further

recommends that Defendants' Motion to Dismiss be denied as to the statute of limitations bar and

the application of the *Younger* and *Rooker-Feldman* doctrines, and with respect to the

unconstitutional custom, policy, or practice claim under *Monell* (Count III), the Americans with

Disabilities Act claim (Count VI), and the Rehabilitation Act claim (Count VII) against the

County.  (*Id.*).

The Federal Rules of Civil Procedure provide that a party may file specific written

objections to the proposed findings and recommendations of a magistrate judge, and a district

---

[1]     For ease of reference, Andrew Hackney and Lauren Hackney will be referred to individually herein by their
first names, "Andrew" and "Lauren."

[2]     The employees of the Allegheny County Office of Children, Youth and Families who are named as individual
Defendants in this case are Jenna Reed, Michelle Veselicky, Michele Haney, Emma Enbar, and Monica Anderson-
Rhones.  (Docket No. 26, ¶¶ 10-14).

judge must conduct a *de novo* review of any part of the R&R that has been properly objected to. *See* Fed. R. Civ. P. 72(b)(2), (b)(3); 28 U.S.C. § 636(b)(1).  The Court may accept, reject, or modify the recommended disposition, as well as receive further evidence or return the matter to the magistrate judge with instructions.  *See id.*  Upon careful *de novo* review of the parties' Objections, the R&R, and the entire record, including Defendants' Motion to Dismiss and supporting briefs, and Plaintiffs' responses thereto, the Court concludes that Plaintiffs' Objections undermine the R&R's recommended disposition in part, while Defendants' Objections do not.  Accordingly, the Court will adopt the R&R, as modified herein, as the Opinion of the Court.

In their Objections, Plaintiffs argue that the Court should adopt the R&R in part and reject it in part.  Specifically, Plaintiffs agree with the R&R's conclusions that the SAC states plausible claims against the County for adopting unconstitutional customs, policies and/or practices (Count III), and for violating the ADA (Count VI) and the Rehabilitation Act (Count VII).  However, Plaintiffs object to the R&R to the extent it recommends finding that the SAC does not sufficiently allege a substantive due process claim against the CYF Defendants (Count I).  Rather, Plaintiffs contend that the SAC adequately alleges that the CYF Defendants engaged in investigative and/or administrative acts that violated Plaintiffs' substantive due process right to family integrity.  Plaintiffs also object to the R&R to the extent it recommends finding that the SAC's allegations do not sufficiently support their municipal liability claims against the County under *Monell* for failure to train, supervise, discipline or adopt necessary policies (Count IV).  Plaintiffs argue that the SAC sufficiently alleges that the County ignored a serious need to train and supervise its employees in handling cases involving intellectually disabled parents, and that the County deliberately chose not to adopt the policies necessary to ensure that it did not violate these parents' constitutional rights.

Defendants, for their part, object to the R&R to the extent it does not recommend dismissing Plaintiffs' claim for an unconstitutional custom, policy, or practice (Count III) based on the lack of a predicate constitutional violation. Defendants argue that since the R&R recommends dismissing Plaintiffs' substantive and procedural due process claims (the only other constitutional claims alleged in the SAC), there is no predicate constitutional violation upon which to base the unconstitutional custom/policy claim, so it must be dismissed on that basis. Similarly, Defendants contend that Plaintiffs' claim for failure to train, supervise, discipline, or adopt necessary policies (Count IV) should also be dismissed for this same reason – the lack of a predicate constitutional claim – in addition to any other basis upon which the R&R recommends dismissal.

## II.    DISCUSSION

### A.  Plaintiffs' Objection:  The Substantive Due Process Claim (Count I) Should Not Be Dismissed

Count I of the SAC alleges that the actions taken by the CYF Defendants to deprive the Hackneys of custody of K.H. violated Plaintiffs' substantive due process right to family autonomy. The R&R recommends that the Court dismiss Plaintiffs' substantive due process claim for failure to state a claim upon which relief can be granted. In their Objections, Plaintiffs argue that the R&R's analysis of the substantive due process claim does not utilize the correct standard of culpability, and also fails to consider all the well-pled allegations in the SAC.

"[S]ubstantive due process liability attaches only to executive action that is 'so ill-conceived or malicious that it "shocks the conscience."'" *Nicini v. Morra*, 212 F.3d 798, 810 (3d Cir. 2000) (quoting *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998))).  However, "[t]he level of culpability required for behavior to shock the conscience largely depends on the context in which the action

4

takes place." *L.R. v. School Dist. of Philadelphia*, 836 F.3d 235, 246 (3d Cir. 2016).  For example, where alleged facts indicate a "hyperpressurized environment" (such as a high-speed police chase or prison riot), a showing of "gross negligence or arbitrariness" by a government official, a higher standard, may be a proper level of culpability, since an official in such a situation does not have the luxury of proceeding in a deliberate fashion.  *See id.*; *Nicini*, 212 F.3d at 811.  In contrast, where alleged facts show that an official has time to make unhurried judgments in an investigation, a lower "deliberate indifference" standard may be a more appropriate level of culpability.  *See L.R.*, 836 F.3d at 246; *Nicini*, 212 F.3d at 810.

The R&R, citing *Miller v. City of Philadelphia*, broadly states, "Child welfare workers abridge an individual's substantive due process rights where their actions 'exceed both negligence and deliberate indifference and reach a level of gross negligence or arbitrariness that indeed "shocks the conscience."'" (Docket No. 43 at 11 (quoting *Miller*, 174 F.3d at 375-76)).  The R&R, citing *Ziccardi v. City of Philadelphia*, further states that "for a child welfare worker to be liable for removing a child from his parents upon suspicions of abuse, the worker must have 'consciously disregarded a great risk that there had been no abuse.'"  (*Id.* (quoting *Ziccardi*, 288 F.3d 57, 66 (3d Cir. 2002))).

In their Objections to the R&R, Plaintiffs argue that no one specific standard applies to all child welfare workers in all situations, and that the context of the CYF Defendants' alleged actions must be taken into consideration.  According to Plaintiffs, because, as alleged in the SAC, the CYF Defendants had ample time to deliberate upon their course of action, the deliberate indifference standard is the appropriate level of culpability here.[3]  In so arguing, Plaintiffs point to the Third

---

[3]   The Court notes that, although in both the R&R and Plaintiffs' Objections to the R&R, the focus appears to be on the initial decisions seeking to remove K.H. from the Hackneys' custody while K.H. was housed at the Children's Home of Pittsburgh, Plaintiffs also object that the R&R should have considered the SAC's allegations of ongoing interference by the CYF Defendants with the Hackney family after the application for emergency custody

Circuit's decision in *Nicini v. Morra*, in which the deliberate indifference standard was applied to a foster care worker who had time to make unhurried judgments in his investigation. *See* 212 F.3d at 809-12. Plaintiffs also contend that this case is comparable to *L.R. v. School Dist. of Philadelphia*, a state-created danger case in which the Third Circuit applied a deliberate indifference standard to an elementary school teacher, where the facts alleged did not indicate circumstances requiring the teacher to make a quick decision. *See* 836 F.3d at 246. Plaintiffs argue that in the present case, too, the facts as pled do not indicate that the CYF Defendants had to make the decisions at issue quickly, nor do the alleged facts indicate that the CYF Defendants were under extreme pressure to make the decisions in question. Rather, Plaintiffs note that, at the relevant time (when the CYF Defendants took initial steps to remove K.H. from the Hackneys' custody), the SAC alleges that K.H. was under the care of medical staff, and her discharge from the Children's Home does not appear to have been imminent.

In light of the cases cited by the parties as well as the cases referenced in the R&R, the Court notes that the Third Circuit describes both *Miller* and *Ziccardi* as involving situations where a defendant child welfare worker "need[ed] to act without 'the luxury of proceeding in a deliberate fashion.'" *Ziccardi*, 288 F.3d at 65 (quoting *Miller*, 174 F.3d at 375)). Nevertheless, the *Ziccardi* court also specified that the defendants in that case (like the social worker in *Miller*) did not appear to need to act quickly or to make a split-second decision. *See id.* Rather, the *Ziccardi* court explained that the *Miller* court, in ruling as it did, seems to have had in mind a social worker needing "to act in a matter of hours or minutes." *Id.* Accordingly, the *Ziccardi* court held that

---

was granted and K.H. was placed in foster care. For present purposes of addressing the R&R's recommendation that the substantive due process claim should be dismissed based on the information available to the CYF Defendants at the time they sought such emergency custody order, however, the Court will similarly address the alleged actions by the CYF Defendants that were made while K.H. was at the Children's Home of Pittsburgh, and the Court need not address the allegations of the CYF Defendants' ongoing interference.

*Miller* required, in cases like it, "proof that the defendant was aware of more than a substantial risk – let us say a great risk – that there was no good cause for the removal of the children." *Id.* at 66.

Whereas, the Third Circuit explained in *Nicini v. Morra* that "[i]n some circumstances, conduct that is deliberately indifferent will shock the conscience." 212 F.3d at 810. The *Nicini* court noted that "in the foster care context, most of the courts of appeals have applied the deliberate indifference standard, although they have defined that standard in slightly different ways." *Id.* (citing cases from various Circuit Courts). The *Nicini* Court compared that case with *Miller*, remarking that the *Miller* court evaluated the actions of a social worker who, after receiving allegations of abuse, separated a child from her natural parent under a standard that exceeded deliberate indifference, holding that the worker would be liable only if his conduct reached a level of gross negligence or arbitrariness that shocks the conscience. *See id.* at 810-11. The *Nicini* court commented that the Third Circuit had emphasized in *Miller* that a social worker is not usually acting in a hyperpressurized environment, but will also rarely have the luxury of proceeding in a deliberate fashion. *See id.* at 811. However, the *Nicini* court further found that the defendant in that case, unlike the social worker in *Miller*, had time to make unhurried judgments in investigating whether to let the plaintiff remain in a home. *See id.* The *Nicini* court therefore concluded that, in the context of the case before it, the social worker's actions in investigating the home at issue were properly judged under the deliberate indifference standard. *See id.*

Based upon the facts alleged here in the SAC, which are taken as true for purposes of Defendants' Motion to Dismiss, the Court agrees that while the CYF Defendants may not have had the luxury of a lengthy period of time at their disposal, their decisions do not appear to have needed to be made in an instantaneous manner or in a highly pressured situation. *See Ziccardi*, 288 F.3d at 65-66 (discussing *Miller*). Moreover, under the facts alleged here in the SAC, the CYF

Defendants (like the defendant in *Nicini*) also did not need to act in a matter of hours or minutes. Accordingly, the Court finds that, rather than the gross negligence standard considered in the R&R, the lower standard of deliberate indifference appears to be appropriate in this case – at least, based on the facts alleged in the SAC, and at this early juncture on a motion to dismiss.[4]  As stated in *L.R.*, the Third Circuit has "defined deliberate indifference as requiring a 'conscious disregard of a substantial risk of serious harm.'"  836 F.3d at 246 (quoting *Vargas v. City of Philadelphia*, 783 F.3d 962, 973-74 (3d Cir. 2015) (additional internal quotation marks and citation omitted)).  "That is, 'deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known.'"  *Id.* (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 241 (3d Cir. 2008)).

Plaintiffs also argue in their Objections that the R&R does not credit all the well-pled allegations, and draw reasonable inferences therefrom in Plaintiffs' favor, in recommending that the SAC fails to state a substantive due process claim upon which relief can be granted.  Plaintiffs argue that the R&R instead cites only to the allegations in the SAC that are consistent with the CYF Defendants' justifications for their actions (showing that that they had a reasonable suspicion of abuse that justified seeking to remove K.H. from the Hackney's custody), while overlooking other allegations in the SAC that do not support the CYF Defendants' position (showing that the CYF Defendants did not have a reasonable suspicion of abuse, so their actions were not justified and "shock the conscience").

Upon review of the SAC's allegations in full, and after considering those allegations in the light most favorable to Plaintiffs, as is necessary when considering a Rule 12(b)(6) motion to

---

[4]    The Court notes that most of the cases cited by the parties involve decisions made on motions for summary judgment, after the record has been developed.  Here, too, after the record has been developed, a different standard of culpability may be appropriate.

dismiss, the Court agrees with Plaintiffs in this regard.  The R&R characterizes the question to be addressed here as "whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [parents' rights].'"  (Docket No. 43 at 12 (quoting *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997))).  The R&R then specifies that, according to the SAC: 1) after K.H.'s pediatrician found her to be dehydrated, K.H. was admitted to Children's Hospital for two weeks of inpatient treatment, and then K.H. was transferred to the Children's Home of Pittsburgh (the "Children's Home"); 2) the staff at the Children's Home expressed concern that the Hackneys, with their intellectual disabilities, might not understand how often K.H. requires feeding; and 3) Defendant Michelle Veselicky noted that no adult caretaker in the home understood that K.H. was not being fed properly, and that K.H.'s problems were due to malnourishment.  (Docket No. 43 at 12-13).  The R&R concludes that these concerns, "among others," led to CYF's application for emergency custody being granted, and that ten days after K.H. entered the Children's Home, Veselicky told the family that K.H. had nearly died from dehydration because the family did not feed her enough, no one in the household recognized that K.H. was sick, K.H. was unsafe in their home, and CYF was going to place K.H. in foster care immediately.  (*Id.* at 13).  The R&R concludes that this information would have created an objectively reasonable suspicion of abuse to justify the actions the CYF Defendants took, and that the CYF Defendants' actions in this regard do not "shock the conscience."  (*Id.*).

However, Plaintiffs, in their Objections, cite to other allegations in the SAC that do not support the reasonableness of the CYF Defendants' suspicion of abuse and the justification for their actions – allegations that are not referenced, and do not appear to have been considered, in the R&R's analysis.  For example, while the SAC does allege that K.H.'s pediatrician diagnosed

9

K.H. with dehydration, the SAC also alleges that the Hackneys brought K.H. to her pediatrician precisely because they understood that she needed medical attention since she was not eating enough. (Docket No. 26, ¶¶ 29-31). The SAC also alleges that the pediatrician's records, which were available to the CYF Defendants, documented that Plaintiffs had a history of appropriately feeding and caring for K.H., and that K.H. had a history of refusing to eat, for which Plaintiffs had previously sought assistance. (*Id.* ¶¶ 28-30, 47). Additionally, according to the SAC, by the time the CYF Defendants sought custody of K.H., they knew that Plaintiffs had demonstrated to the satisfaction of Children's Home staff that they were able to feed and care for K.H. without assistance. (*Id.* ¶¶ 37, 46).

Plaintiffs also argue that the SAC alleges that the CYF Defendants concocted false allegations that the Hackneys neglected K.H., and that the CYF Defendants suppressed evidence showing that the Hackneys had not neglected K.H. Specifically, Plaintiffs note that the SAC alleges that the CYF Defendants made false statements about the Hackneys, including that: 1) they did not understand that K.H. was sick or was not eating enough; 2) they waited a week to take K.H. to the doctor because Andrew did not want to take time off of work; 3) they regularly left K.H. in the custody of Andrew's sister, who they knew forgot to feed her; and 4) they only fed K.H. two to three times per day. (Docket No. 26, ¶¶ 44, 45, 53, 54). Plaintiffs further explain that the SAC also alleges that the CYF Defendants deliberately suppressed information showing that the Hackneys had not abused or neglected K.H., including that Defendant Reed had interviewed Andrew's mother, Cynthia Hackney ("Cynthia"), and knew that Cynthia was a primary caregiver who resided in the home, was not intellectually disabled, and provided substantial parenting assistance to Andrew and Lauren. (*Id.* ¶¶ 24, 25, 42, 43). Plaintiffs contend that these false allegations were concocted, and this information was suppressed, for the purpose of obtaining

custody of K.H. and permanently placing her with a non-disabled couple whom the CYF Defendants considered would be better parents.

In light of these additional allegations in the SAC, which are cited by Plaintiffs in their Objections but not specifically addressed in the R&R, the Court agrees that the R&R does not appear to have considered all the relevant allegations in evaluating the reasonableness of the CYF Defendants' suspicion of abuse, and in determining that the CYF Defendants' alleged actions were not conscience shocking. Moreover, upon consideration of the SAC in its entirety, the Court finds that Plaintiffs allege facts therein showing that, if true, the CYF Defendants consciously disregarded a substantial risk that there had been no abuse when they took the alleged actions to remove K.H. from the Hackneys' custody – *i.e.*, that they acted with deliberate indifference. *See L.R.*, 836 F.3d at 246. Accordingly, the Court finds that the facts alleged in the SAC aver conscience-shocking behavior by the CYF Defendants sufficient to state a substantive due process claim.

Accordingly, the Court does not agree with the R&R's stated reasons for dismissing Plaintiffs' substantive due process claim. Plaintiffs' Objection in this regard is therefore sustained, and Defendants' Motion to Dismiss the substantive due process claim at Count I will be denied.[5]

---

[5]     Although the R&R notes that absolute immunity does not extend to investigative or administrative actions taken by child welfare workers outside the context of a judicial proceeding, the R&R also notes that it does not address qualified immunity since dismissal of the constitutional claims is recommended based on other grounds. (Docket No. 43 at 10 n.2). The Court notes that Defendants, in their Motion to Dismiss, argue that the individually named CYF Defendants are entitled to qualified immunity here because the SAC fails to establish that any constitutional rights (or federal laws) were violated. However, Defendants do not fully develop such argument, nor do they address it in their Objections. A Court may find that a municipal official is entitled to qualified immunity at the motion to dismiss stage if "(1) the facts alleged show the [official's] conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case." *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (citing *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010)). Thus, "qualified immunity should only be granted on a motion to dismiss when it is 'established on the face of the complaint.'" *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)). Here, the facts alleged in the SAC do not make clear that the CYF Defendants' conduct did *not* violate a constitutional right, or that any such right was not clearly established. Because the Amended Complaint does not show that the CYF Defendants' actions did not violate a clearly established constitutional right, dismissal on qualified immunity grounds is premature. *See Thomas*, 463 F.3d at 291 (a Rule 12(b)(6) dismissal based on qualified immunity

## B. **Plaintiffs' Objection:  The Conspiracy Claim (Count V) Should Not Be Dismissed**

The R&R recommends that, if the Court dismisses Plaintiffs' substantive due process claim against the CYF Defendants, the Court should also dismiss Plaintiffs' conspiracy claim at Count V of the SAC, based on the County being the only remaining Defendant in the case, and since one cannot conspire with oneself.  (Docket No. 43 at 13-14).  Plaintiffs argue in their Objections that if the substantive due process claim against the CYF Defendants is not dismissed, the CYF Defendants remain in the case, and the County will not be the only defendant here.  (Docket No. 46 at 11).  Plaintiffs also argue that, even if the County were the only remaining defendant, the SAC plausibly alleges that the County conspired with other entities who are not named as defendants in the SAC (and do not need to be named in this action), so dismissal of the conspiracy claim for the reasons set forth in the R&R would still be inappropriate.  (*Id.* at 11-12).  Defendants have not responded to this Objection by Plaintiffs.

As explained, *supra*, since the Court is not dismissing all claims against the CYF Defendants, the CYF Defendants remain parties in this action, the County is not the only remaining defendant here, and Plaintiffs' conspiracy claim will not be dismissed on such basis.[6]  Plaintiffs'

---

will be upheld "'only when the immunity is established on the face of the complaint'" (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001))).  Nevertheless, the CYF Defendants are free to raise qualified immunity at a later time.

The R&R also does not address Defendants' argument that Plaintiffs do not allege in the SAC how each individual CYF Defendant was personally involved in the violation of Plaintiffs' constitutional rights, nor is this issue addressed in the parties' Objections.  However, in opposing Defendants' Motion to Dismiss, Plaintiffs include a chart indicating allegations that they have made against each CYF Defendant in this regard.  (Docket No. 36 at 14).  Upon review of the cited allegations, the Court agrees with Plaintiffs that the SAC adequately alleges personal involvement by the individual CYF Defendants in the alleged violation of Plaintiffs' constitutional rights.

[6]      Furthermore, although not addressed in the R&R or in the parties Objections, for purposes of a Rule 12(b)(6) motion, the Court notes that the SAC adequately alleges that Defendants engaged in a conspiracy to deprive the Hackneys custody of their daughter.  To establish a conspiracy claim under 42 U.S.C. § 1985, a plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).  Although Defendants argue in their Motion to Dismiss that the

Objection to the R&R is therefore sustained in this regard, and the conspiracy claim at Count V of the SAC will not be dismissed.

### C. **Plaintiffs' Objection:  The Failure to Train, Supervise, or Adopt Necessary Policies Claim (Count IV) Should Not Be Dismissed**

The R&R also recommends that Plaintiffs' municipal liability claim under *Monell* (Count IV) against the County for failure to train, supervise, discipline or adopt necessary policies should be dismissed for failure to state a claim.  Plaintiffs argue in their Objections that, although the R&R recommends that the SAC sufficiently alleges municipal liability based on an unconstitutional policy or custom (Count III), the R&R should also have recommended that the SAC adequately alleges municipal liability based on a failure to train, supervise, or adopt necessary policies.  (Docket No. 46 at 8-11).

Plaintiffs note that the R&R acknowledges that the SAC "'points to a "failure" of [the County] to train, supervise, and discipline employees, and a "failure" to adopt policies,'" but that the R&R recommends dismissal of such claim because "'Plaintiffs do not assert deliberate indifference, or even anything close to it, as to these lapses,' and '[t]he assertion that [the County] made a deliberate or conscious choice not to train or supervise lacks factual support.'"  (Docket No. 46 at 9 (quoting Docket No. 43 at 17)).  In support of their Objection, Plaintiffs point to the SAC's "Factual Background" section, which alleges that:  the Family Court requested that the County develop a program to correct its failure to provide services to intellectually disabled parents; the County's Office of Intellectual Disabilities (the "OID") created a Parent Assessment

---

Plaintiffs' conspiracy claim is merely speculative, the Court notes that the SAC alleges that:  the County has a custom of working to end the parental rights of intellectually disabled parents rather than unifying them with their children; numerous caseworkers and supervisors assigned to Plaintiffs' case have acted in conformity with this custom because it is widespread and known; and actions were taken by each Defendant here in furtherance of the conspiracy, including attendance at a transition meeting during which multiple Defendants discussed how to facilitate terminating the Hackneys' parental rights.

Team (the "PAT") to evaluate and make recommendations for these parents; an OID employee witnessed the CYF caseworkers ignore the PAT's recommendations and instead engage in tactics calculated to prevent reunification and facilitate terminating these parents' rights to their children; the County later "disbanded the PAT despite knowing that the team was necessary for CYF to evaluate and meet the needs of intellectually disabled parents," and knowing that such disbandment "was likely to result in the violation of these parents' federal rights." (Docket No. 46 at 10 (citing Docket No. 26, ¶¶ 15-22)).

Upon review of the allegations at paragraphs 15-22 of the SAC, the Court finds that Plaintiffs have adequately alleged factual support for "[t]he assertion that [the County] made a deliberate or conscious choice" not to adopt and implement policies to protect the rights of intellectually disabled parents, and to train and supervise its personnel in this regard, even though the County was aware of the need to do so. Accordingly, the Court disagrees with the R&R and finds that Plaintiffs have adequately alleged a municipal liability claim against the County for failure to train, supervise, or adopt necessary policies. Plaintiffs' Objection to the R&R is therefore sustained in this regard.

### D. Defendants' Objections:  Counts III and IV Should Be Dismissed on the Basis of No Predicate Constitutional Claims

Defendants argue in their Objections that the R&R should have recommended that the Court dismiss Plaintiffs' *Monell* claims at Count III (unconstitutional custom, policy, or practice) and Count IV (failure to train, supervise, discipline or adopt necessary policies) based on the dismissal of Plaintiffs' predicate constitutional claims. As the Court finds that Plaintiffs' substantive due process claim at Count I should not be dismissed (*see* discussion, *supra*), a predicate constitutional violation remains here, upon which Plaintiffs' *Monell* claims may be based. Accordingly, Defendants' Objections to the R&R are overruled and, to the extent

14

Defendants seek dismissal of Plaintiffs' *Monell* claims at Counts III and IV based on the lack of a predicate constitutional claim, Defendants' Motion to Dismiss will be denied.

### III.    CONCLUSION

As such, the Court will sustain Plaintiff's Objections as set forth above, overrule Defendants' Objections as set forth above, adopt the R&R as the Opinion of the Court, as modified herein, and grant in part and deny in part Defendants' Motion to Dismiss the SAC, as more specifically set forth below.

An appropriate Order follows.

### ORDER

AND NOW, this 31st day of March, 2026,

IT IS HEREBY ORDERED that, to the extent set forth above, Plaintiffs' Objections to the R&R (Docket No. 46) are SUSTAINED, Defendants' Objections to the R&R (Docket No. 49) are OVERRULED, and the R&R (Docket No. 43) is ADOPTED, as modified herein, as the Opinion of the Court.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Docket No. 30) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that Count II is DISMISSED pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The dismissal of Count II is WITH PREJUDICE, as the parties have not objected to the recommendation that such claim be dismissed. The motion is otherwise DENIED.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf:        The Hon. Kezia O. L. Taylor
               All counsel of record

15